STEPHEN N. BREED *vs.* HENRY BREED & others.

Essex. Jan. 29. — June 23, 1875. AMES, J., absent. ENDICOTT, J., did not sit.

Upon a petition under the St. of 1864, *c.* 306, by the owners of lands abutting on a harbor, for the settlement and determination of the boundaries of the flats adjacent, the court, after the passage of the St. of 1870, *c.* 348, passed an order appointing commissioners to settle and determine the lines and boundaries of the flats to which the petitioners were entitled as adjacent to their uplands respectively, according to the provisions of the colony ordinance of 1647, reserving all questions of title, otherwise held or acquired, until the return and acceptance of the report of the commissioners. The commissioners in 1872 made a report accordingly; and any right of the respondents to avail themselves of the express repeal of the St. of 1864 by the St. of 1871, *c.* 338, § 7, was waived by not being invoked until after the St. of 1872, *c.* 107, had provided that such repeal should not affect cases pending, and after such report of the commissioners had been returned. *Held*, that, under the St. of 1871, a title asserted by one of the respondents against one of the petitioners to a portion of the flats by deed or prescription could not be tried in

this case, and would not be affected by an acceptance of the report under the St. of 1871; and, no other party objecting to such acceptance, that the report might be accepted under the St. of 1871.

PETITION filed August 19, 1869, under the St. of 1864, c. 306, by Stephen N. Breed, Henry J. Thing, William D. Rowe, Jr., Joseph Blaney, Peter M. Neal and Nehemiah Lee, alleging that the petitioners were seised in fee of certain parcels of land (described by metes and bounds) abutting on Lynn Harbor, with the buildings, wharves and other structures thereon, and of the flats adjacent and belonging thereto; that Lynn Harbor was deep and circular in form, and the flats thereof covered by high water; that the other owners of the land abutting on the harbor, and the flats adjacent and belonging thereto, so far as they were known to the petitioners, were Henry Breed and others named; that the petitioners could not possess, occupy and improve their flats while their ownership respectively in the same, and the boundaries thereof, were not settled and determined; and praying for notice to the persons named and all other parties interested, and that the ownership in said flats respectively, and the boundaries thereof, might be settled and determined according to law.

George L. Babb, having acquired the title of Thing and Rowe was afterwards admitted as a petitioner in their place. The persons named in the petition, having been served with notice, appeared and filed answers, not disputing the title of the petitioners to the upland as set forth, but denying their title in parts of the flats, and setting up title in themselves.

At November term 1870, to wit, December 7, 1870, *Wells*, J., passed an order, appointing three commissioners "to settle and determine the lines and boundaries of the petitioners' flats, to which they are entitled as adjacent to the upland owned by them respectively, according to the provisions of the colony ordinance of 1641 or 1647 respecting the ownership of flats adjacent to upland, irrespective of any ownership or title acquired in any other way," and providing that "the finding of the commissioners is not to affect any title otherwise acquired," and that "all questions and claims by any of said parties, that are now made or that may arise in the case, as to titles or rights otherwise held or acquired, are to be determined in such manner as the court

shall order after the return and acceptance of the report of the commissioners."

At April term 1872, to wit, May 6, 1872, the commissioners filed their report, with a plan referred to therein, in which they determined and settled the boundaries of the flats which the petitioners owned as adjacent to the uplands as described in the petition, without considering any question of ownership in the flats independently of ownership in the uplands to which the flats were adjacent.

At the hearing at November term 1874, before *Wells*, J., after notice to all parties interested, upon the question of the acceptance of the report of the commissioners and the modification of the lines fixed therein, it appeared that no party objected to the report, or to the lines defined therein as the boundary lines of the flats adjacent to the upland of the petitioners as described in their petition ; that the estate owned by the respondent Henry Breed adjoined on its northwesterly side the estate of the petitioner Babb ; and that the northeasterly boundary of the flats of which Henry Breed by his answer claimed the ownership, and to which he claimed title by deed and prescription, was in a southeasterly direction from Broad Street ; while, as determined by the report of the commissioners, the boundary lines of the flats adjacent to Babb's land ran in a southerly direction from that street across the southeasterly boundary line of Henry Breed, and showed that a large portion of the flats which Henry Breed by his answer denied that Babb owned, and alleged himself to be seised of in fee simple, and claimed title to by deed and prescription, and had a wharf upon, were adjacent and appurtenant to Babb's upland.

Henry Breed asked to have the issue tried by a jury, between himself and Babb, as to the title to the flats thus in controversy ; and contended that the proceedings must be in accordance with the St. of 1864, *c.* 306 ; and that the court could not enter a final decree under the St. of 1871, *c.* 338, accepting the report of the commissioners fixing the boundaries of the flats adjacent and appurtenant to the upland of the petitioners under the colonial ordinance of 1647, and leaving undetermined the titles of parties to the suit according to the modification of those lines by deed or prescription.

But the judge ruled otherwise, and, on motion of the petitioners, ordered that the report of the commissioners be accepted and approved, " provided that this acceptance and approval shall have no other or greater force and effect than a report filed in a like case under the St. of 1871, *c.* 338 ; and the boundary lines drawn on said plan and referred to in said report shall bind and conclude the parties only as lines of division of their flats, according to their ownership thereof as proprietors of adjacent upland under the colony ordinance of 1647, but shall not be taken or deemed to estop the parties or any of them from showing, in any form of action or issue, a modification or change of those lines of ownership by grant or prescription in any particular case."

From this order Henry Breed appealed, and the judge reported the case to the full court.   If the order could be entered under the St. of 1871, *c.* 338, it was to be affirmed ; otherwise, the case to stand for further proceedings under the St. of 1864, *c.* 306.*

*J. C. Perkins & T. B. Newhall,* for the petitioners.

*D. E. Ware,* for Henry Breed.

GRAY, C. J.   The title which proprietors of land bounding on the sea have in the adjacent flats depends either upon the general rules of law, applying the principle of the colonial ordinance of 1647 to the shape of the particular shore in question, òr upon acts of the parties, as shown by deed or agreement, or by such occupation as creates a prescription.

The St. of 1864, c. 306, under which the petition in this case was originally filed, required the title, as affected by acts of the parties, to be tried and determined in court, before the appointment of commissioners to ascertain the course of the boundary lines over the flats.   *Wonson* v. *Wonson,* 14 Allen, 71.

The St. of 1870, *c.* 348, authorizing the trial of all issues of facts raised by answer or plea to be postponed, at the discretion of the court, until after the report of the commissioners had been made — being a statute affecting the forms of proceeding or remedy only, and not the rights or titles of the parties — applied to this case, in which, at the time of its passage, no commissioners had been appointed or trial had; and justified the order passed at November term 1870, by which commissioners were appointed

---

* The statutes upon this subject are printed in a note to the report of this case when before the court at an earlier stage.   110 Mass. 532.

to settle and determine the lines and boundaries of the flats adjacent to each parcel of upland according to the colony ordinance, "irrespective of any ownership or title acquired in any other way," and the trial of such ownership or title was postponed until the return and acceptance of the report of the commissioners. *Breed* v. *Breed*, 110 Mass. 532.

The St. of 1871, *c.* 338, is a complete revision of the legislation upon this subject. It differs from the previous statutes in two important particulars. 1st. It requires the commissioners to determine and report the boundary lines, not merely of the flats of the petitioners, but of "all other flats adjacent and owned by other persons, whose lines may be affected in determining the lines of such petitioners' flats." 2d. It makes no provision for the trial of any question of title in the flats depending upon acts of the parties; and declares that the report of the commissioners, when accepted and recorded, shall forever fix and determine the rights of all persons, "except where definite boundary lines have been established by parties legally authorized so to do."

The St. of 1871, *c.* 338, § 7, expressly repealed the St. of 1864. The St. of 1872, *c.* 107, provided that this section should "not be taken to affect any proceedings which had already been commenced and were pending," at the time of its passage, under the St. of 1864. And it has been already decided in this case that the respondents, not having pleaded or set up such repeal until after the passage of the St. of 1872 and the return of the report of the commissioners, had waived any right to avail themselves of such repeal to defeat this proceeding. *Breed* v. *Breed*, 110 Mass. 532.

The St. of 1872 simply provides that the express repeal, contained in § 7 of the St. of 1871, shall not affect pending proceedings; and leaves the effect of the other sections of this statute upon such proceedings to be determined by the ordinary rules of construction. Those sections, as is manifest from their terms, and is admitted by the counsel on both sides, do not impair the validity of the proceedings of the commissioners appointed before they took effect. But so far as they prescribe the action to be taken by the court upon or after the report of the commissioners, they must supersede the former statutes and control the subse-

quent proceedings in the case, when this can be done without injuriously affecting the rights of any party before the court.

The only objection made to the acceptance of the report of the commissioners is by one of the respondents who claims, and desires to try, against one of the petitioners, a title to a portion of the flats by deed or prescription. Upon this title, a final decree under the St. of 1871 has no more effect than was contemplated in the order appointing the commissioners in this case, and is expressed in the decree accepting their report and now appealed from. The only difference is, that since the passage of the St. of 1871 such title cannot be tried in this case, as it might have been under the previous statutes, but is left open to be determined in any appropriate form of action hereafter.

The motion of the appellant to have his title tried in this case was therefore rightly refused, and no reason is shown why the decree accepting the report of the commissioners should not be

*Affirmed.*