## WILLIAM A. GARDNER *vs.* COUNTY COMMISSIONERS OF ESSEX.

Suffolk. January 23, 1903. — April 1, 1903.

Present: KNOWLTON, C. J., MORTON, HAMMOND, LORING, & BRALEY, JJ.

*Constitutional Law. Landing Place. County Commissioners.*

St. 1882, c. 109, (R. L. c. 48, § 102,) giving the county commissioners authority, on the representation of ten freeholders, to ascertain the correct location of a common landing place, erect the necessary bounds thereof, and make a record of their doings, gives them no jurisdiction over controversies concerning property, and therefore is not unconstitutional in containing no provision for a trial by jury.

Under St. 1882, c. 109, (R. L. c. 48, § 102,) the county commissioners, on a petition to ascertain the correct location of a common landing place, supported by evidence warranting a finding that there is at the beach in question a landing place used in common by a part of the public under a claim of right, may take jurisdiction to ascertain the correct location of the landing place, erect its bounds, and make a record of their doings, in spite of the fact that the existence of the landing place is controverted in good faith by the owner of the beach.

PETITION, filed December 22, 1902, for a writ of certiorari, to quash the proceedings of the county commissioners of the county of Essex, in an alleged attempt to establish the location of a common landing place on land of the petitioner at Mingoes Beach in Beverly, alleging that St. 1882, c. 109, under which

the commissioners acted, was unconstitutional and void, as in violation of article 15 of the Declaration of Rights, in making no provision for a trial by jury, and also that the commissioners had no jurisdiction, because the existence of the alleged landing place was disputed in good faith by the petitioner, also alleging that there was not sufficient evidence to warrant a finding that the alleged common landing place existed.

The case came on to be heard before *Loring,* J., who reserved it upon the petition and return for the consideration of the full court.

*R. W. Boyden,* for the petitioner.

*D. W. Quill,* for the respondents, submitted a brief.

KNOWLTON, C. J.   The St. 1882, c. 109, (R. L. c. 48, § 102,) is as follows: " When ten or more freeholders in any county represent to the county commissioners for such county that the exact location of a common landing place in such county cannot be readily ascertained, such county commissioners shall make investigation thereof; and if it appears that the representation is correct, they shall, after giving the notice required in laying out highways, proceed to ascertain the correct location of such landing place, erect the necessary bounds thereof and make a record of their doings in the way provided in case of laying out highways."   The respondents acted under this statute, upon a petition of ten freeholders asking them to ascertain the correct location and erect the bounds of Mingoes Beach in Beverly. This is a petition for a writ of certiorari, alleging that the proceedings of the respondents under this petition were erroneous.

We must first consider the meaning and legal effect of the statute.   It is plain that it was not enacted for the benefit of disputants contending as to the ownership of property.   It contains no provision for a trial by jury, without which, under article 15 of the Declaration of Rights in our Constitution, controversies concerning property cannot be settled against the objection of either party. *Powers* v. *Raymond,* 137 Mass. 483, 485.   *Parker* v. *Simpson,* 180 Mass. 334, 345.   A dispute between the landowner on one side and the public on the other, as to the existence of a common landing place, is plainly a controversy concerning property.   The statute does not even indicate that there is to be a trial at all in reference to rights of

property, but it prescribes for the county commissioners a different kind of duty, namely, the ascertainment of the location and the erection of the bounds of a landing place, whose existence is assumed as a condition of the exercise of jurisdiction. If the legal rights of the public, who affirm, and of private landowners, who deny, its existence, are in controversy, this statute does not attempt to determine them. The duty imposed upon the county commissioners is of a kind that cannot be performed by a jury. It is like the establishment of monuments along the lines of highways, and the perambulation of town lines, and of State lines, and the setting of monuments in connection therewith, and the determination of the boundary lines of persons owning flats covered at high water. R. L. c. 48, §§ 101, 104; c. 25, §§ 2, 3, 4, 5; c. 183. In cases under these statutes, if the substantive rights of parties and their titles to property are in controversy, the questions are determined by other tribunals. The performance of the ministerial duty of making surveys with plans, locating lines upon land, and establishing monuments, is provided for by these statutes. In applying their deeds, or other muniments of title, to the subjects to which they relate, and in designating and perpetuating upon land visible indications of ownership, parties need the aid of other agencies than juries. The Legislature, therefore, properly may provide subordinate tribunals or officers, whose action in this kind of incidental and ministerial service shall be binding upon the public, and upon private persons affected by it. But they are binding only in regard to these incidentals. They cannot affect substantive, fundamental rights.

In the present case it appeared at the outset that the present petitioner, the owner of the land which was alleged to be a common landing place, denied the existence of such a landing place, and contended that he had a perfect title to the property. He also contended that the respondents had no jurisdiction to proceed in any case where the existence of the landing place is controverted in good faith by the landowner.

In reference to this contention, we must either hold that, when the existence of a landing place is in good faith denied by the owner of the property, the commissioners are powerless to do anything; or we must hold that they can go on, and if they find that there is a common landing place there, in the sense

that there is a place which is used in common by a part of the public under a claim of a public right, they may ascertain the correct location of it, and erect its bounds, and make a record of their doings, which proceedings will have no effect to determine the legality of the claim of either of the opposing parties, but will leave them to ascertain their rights in a proper suit before some other tribunal. In its principal features, this statute more nearly resembles St. 1871, c. 338, (R. L. c. 183,) than any other that has come to our attention. That provides for fixing the boundary lines of proprietors of land bounding on the sea across adjacent flats covered at high water. In *Breed* v. *Breed*, 117 Mass. 593, it was held that these lines might be established, notwithstanding that there was a controversy about the title, and that the question of title could not be tried in the proceedings under the statute, but must be left to be settled afterward in any appropriate form of action. We are of opinion that this decision is applicable to the present case.

Undoubtedly, in order to take jurisdiction, the county commissioners were obliged to find that there was a common landing place, such as was alleged in the petition. But they could not determine, against objection, whether this was a landing place in which the public had legal rights. We are of opinion that the averments of the petition were sufficiently proved to give them jurisdiction, if they found that there was a landing place there, used in common by a part of the public under a claim of a public right. On finding this fact, they might ascertain its location and erect its bounds. If in an action brought hereafter, it appears that the public have a legal right to a common landing place, substantially identical in extent and location with that referred to in the petition, these bounds will show its limits. If, on the other hand, it appears that the public have not acquired such a right, these proceedings will be of no effect.

We cannot say, upon the pleadings and evidence, that there was error in the finding of the respondents that there was such a landing place *de facto* as warranted them in taking jurisdiction. On the question whether there was any evidence which would sustain a finding that the public have a legal right to a common landing place there, we express no opinion.

*Petition dismissed.*