INHABITANTS OF DEERFIELD *vs.* CONNECTICUT RIVER RAILROAD.

Franklin.   Sept. 21, 1886. — April 4, 1887.   DEVENS & W. ALLEN, JJ., absent.

A town may acquire by prescription a private right of way as appurtenant to a burial ground owned by the town.

On the issue whether a town had acquired a right of way by prescription in 1883, within the location of a railroad, there was evidence that in 1855, on a petition that a private way leading to the town burial ground be altered by being carried a certain distance to the east, the town voted to grade the road agreeably to the petition, appropriated a sum of money therefor, and appointed the selectmen a committee for the purpose; that in the same year the road was changed so as to pass along and within the location of the railroad, and a fence was moved back; that from time to time, as the fence around the burial ground needed to be repaired, materials for that purpose were carried over the road; and that the bodies of a number of paupers were taken over the road for burial. *Held*, that the evidence was sufficient to sustain the issue.

On a petition to a town to alter the location of a private way belonging to the town by carrying it "about the width of the present road to the east," the town voted to grade the road agreeably to the petition, and appointed the selectmen a committee to attend to the matter. A majority of the selectmen accepted a license from a railroad corporation, revocable at the pleasure of the corporation, to place the road within the location of the railroad, and so constructed it.

*Held,* that the selectmen had no authority to bind the town by such acceptance. *Held, also,* that even if the town had no knowledge of the license, and afterwards used the way under a claim of right, it could not acquire a right by prescription, if the corporation had no knowledge of such claim, and supposed that the town was using the way under the license.

If a town has acquired a private right of way by prescription along the location of a railroad corporation, the latter has no right to obstruct it by placing an embankment on the way, although it does so in a reasonable and proper manner.

No exception lies to the refusal to give an instruction in the language requested, if it is given in substance.

Tort, for obstructing, on November 1, 1883, and continuously from that time to April 17, 1886, the date of the writ, a private way leading from a county road over land of the plaintiff, and thence, along and over the land of the defendant, to a burial ground owned by the plaintiff. Answer, a general denial. Trial in the Superior Court, before *Mason,* J., who allowed a bill of exceptions, in substance as follows:

In 1805 a tract of land was conveyed to the plaintiff, which comprised the land now occupied by a burial ground, and the land west of it to the county road. Over the latter parcel the road-bed of the defendant's railroad was constructed in 1846, running north and south. At the time the railroad was built, the only roadway to the burial ground was a private way running from the county road.

In 1849 the town of Deerfield conveyed to the defendant, by warranty deed, land described as follows: "A certain tract of land situate in said Deerfield, lying west of the enclosed part of the burying ground near the depot in said Deerfield, being all of the land of the said town there situate taken by the said railroad company according to the plan of the survey and location thereof filed in the office of the clerk of the courts for the said county of Franklin, to which said plan reference may be had for a particular description of the land hereby conveyed."

It appeared that there was no survey and location of the land which the defendant contended was conveyed by this deed on file in the office of the clerk of the courts for the county of Franklin, although there were two books of plans of the location of the railroad in said office, which contained the locations to within a few hundred feet of the land in question on either side. The defendant was permitted to put in evidence its private office plans of its location.

There was evidence of a protracted controversy between the plaintiff and the defendant, extending from 1846 to the time of giving the deed in 1849, and that the money received for this deed was appropriated by vote of the town, on July 28, 1849, "for the purpose of fencing the burying ground, removing and fitting up the hearse-house, and, so far as it will go, for grading the road leading to the Town Street cemetery," but there was no evidence how much, if any, of said money was used for said grading.

The plaintiff contended, among other things, that no plan of the location of the defendant's railroad over the land of the plaintiff had ever been filed; that no land of the plaintiff had been legally taken by the defendant; that, there being no description in the deed of the land thereby intended to be conveyed, all the land the defendant could hold under said deed was what it had actually occupied; and that from 1855 to 1883 the defendant had occupied no portion of said private way.

In 1855 Ephraim Williams and others petitioned the selectmen of Deerfield, setting forth that the road leading to the cemetery and depot was unnecessarily steep and difficult of ascent, and requesting that an alteration be made "in the now travelled road, by carrying the same about the width of the present road to the east, and by commencing the ascent of the hill two or three rods north of the house of Arad Munn." A town meeting was thereupon duly called, the warrant for which contained the following articles, among others: "Article V. To see if the town will cause the road to the Town Street cemetery to be graded, agreeable to the petition of Ephraim Williams and others. Article VI. To see if the town will raise a sum of money, and how much, for grading the road to the burying ground, and act thereon." At this meeting the following votes were passed: "Voted, on article five, that the selectmen be a committee to grade the road to the burying ground agreeable to the petition of Ephraim Williams and others. Voted, on article six, that the assessors be authorized and directed to raise a sum not exceeding one hundred and fifty dollars, for the purpose of grading the said road to the burying ground." No other or subsequent vote of the town appeared with reference to the action of the selectmen under these votes.

There was evidence, that in 1855, after these votes of the town, the way was changed so as to pass along the land claimed by the defendant, until it joined the old way at a point near where the old way crossed the track of the railroad.

The defendant put in evidence a paper, signed by two of the selectmen of Deerfield, a majority of the board, and by the president of the defendant corporation, and dated May 28, 1855, as follows:

" Memorandum of an agreement between the inhabitants of Deerfield, of one part, by their selectmen, who are for that purpose lawfully authorized, and the Connecticut River Railroad Corporation, by D. L. Harris, their President:

" Whereas, the present road from the Academy Lane to the cemetery in Deerfield, beginning near the dwelling-house of Arad Munn, is inconvenient in its present location, and the said inhabitants desire to make a new road, beginning northerly of said Munn's house and near the house of Joel Sexton, thence running up the side of the railroad embankment, and over a portion of the land taken and belonging to the said railroad corporation, and thence to the railroad track where the present road crosses the same:

" Now therefore the said railroad corporation, willing to accommodate said inhabitants, as far as may be, hereby gives them a license to make and use said road, and to maintain the same until said corporation shall give them notice to discontinue the same, reserving to said corporation the right to give such notice at any time when they may deem it for their interest to do so. And the said inhabitants, accepting said license, hereby agree to the terms and limitations of the same which are herein expressed."

There was evidence that one Hoyt made a plan of the proposed new road, and that a copy of this plan was filed in the town clerk's office of Deerfield, the certificate of filing being in the handwriting of the then clerk of Deerfield; and that Hoyt placed the stakes for the road in 1855; but there was no other evidence that he was employed by the town or its selectmen to make the plan or place the stakes; and there was no other evidence that the town had any notice of the existence of the paper of May 28, 1855; and no evidence that the town took any action thereon.

The plaintiff contended that it had a right by prescription to the use of the way; and, to show such right, it put in evidence the petition of Williams and others, above referred to, and the votes of the town thereon; also a vote of the town in 1873 to build a new fence around the burial ground; and the fact that the fence was built, and the materials therefor were carted over this road.    There was also evidence that when the road was built a fence was moved back on to the railroad embankment; that the road had since 1855 been used for carrying materials to repair fences and build new ones; and that the bodies of a number of paupers had been taken over the road for burial between 1855 and 1883, in a hearse owned by the town.

The defendant also put in evidence tending to show that for the proper construction of its track, and to lay another track, it was necessary to extend its embankment so as to cover part of the way in question; that the east track was carried as near the east line of location as was practicable, and that the filling for the west track necessarily encroached upon the way in question, where it ran parallel to the course of the railroad.

The defendant also put in evidence a notice to discontinue said road, served upon the town in 1885.

The defendant requested the judge to instruct the jury as follows: " 1. The plaintiff has not shown such use of the way as would give it a prescriptive right to its use as claimed.    2. If a road was built in 1855 substantially in the location marked upon the Hoyt plan, and the same was in whole or in part upon the land of the railroad as shown by the copy of its location, the plaintiff could not by the use shown thereof acquire a right of way over said proposed way.    3. The selectmen of Deerfield had authority to accept in behalf of the town the license granted them by the paper of 1855, and all acts done under the license and all use made of the road built under it were, upon the evidence in the case, permissive, and the plaintiff's use was not adverse, and no right of way was acquired thereby.    4. If the selectmen of Deerfield represented to the officers of the defendant corporation that they had authority from the town to enter into the contract of 1855, and if the defendant relied upon this representation and by reason thereof authorized the building of the road upon its land as provided in said contract, the

plaintiff would acquire no right to the use of said way until the defendant was notified that the plaintiff was not using it by virtue of the license or permission therein contained. 5. If the railroad company laid its second track in a reasonable and proper manner, and in so doing necessarily filled up a part of the way which before that time the town had used, it had a right so to do, and the plaintiff cannot recover. 6. If the jury find that a part only of the way built in 1855 was over a part of the way used prior thereto, and if the jury find that so much of the road as was outside of the location of the old road was built and used by permission of the defendant corporation, the plaintiff cannot recover."

The judge declined to instruct the jury as requested; but instructed them as follows:

" The first controverted point in the case is, was there a valid taking of the land occupied by the railroad as its location in 1846. There is no controversy that the taking was effected by filing in the office of the clerk of the courts a plan of the survey and location, if it was effected at all. There is no controversy, on the one hand, that, if such plan was filed, it did effect a valid taking, or, on the other, that, if it was not filed, no valid taking was effected. If there was a valid taking, then the property right of the plaintiff in this way was extinguished. It is not material to determine whether it was extinguished by the taking, or whether it was extinguished by the deed in 1849.

" If you find that the roadway was extinguished, or the plaintiff's right in it, we then have to consider whether the plaintiff has since 1849 acquired a right of way across these premises. One of the claims of such acquisition is that it was acquired by prescription, by which is meant an open, adverse use, under a claim of right, continued for twenty years. No evidence tending to show that this roadway was treated as a public way, that it was repaired by a highway surveyor as a public road, is admitted to show use by the town in its corporate capacity, and it could have no tendency to show such use. So far as, if introduced at all, it could show anything, it would show that the road was not a private way to this cemetery property, but would tend rather to show that it was simply a public way, which it was the surveyor's duty to keep in repair. But the plaintiff contends

that in 1855 this road was entered upon by the town, through its agents appointed for that purpose, and worked. That is such an act as would constitute an open, adverse use of this way. It would be such an act as would assume a claim of right, if nothing else appeared; but it is in evidence that a committee, appointed to enter and in behalf of the town grade the roadway in question, entered into an agreement with the defendant in which they purported to act for the plaintiff, and in which the defendant purported to give to the plaintiff a license to enter and occupy the roadway in question. No authority is shown for the selectmen, who were the committee appointed by a vote of the town to grade the road in question, to execute such an agreement with the defendant, and no agreement in that paper is binding upon the town in the sense that the town is to be deemed to have recognized or assented to the claim of the defendant, that it could control the roadway in question; but if the selectmen appointed to enter, as agents of the town, to grade the road in question, instead of entering under the rights of the town, obtained from the defendant corporation permission to enter and grade the road, and entered under that permission, their acts cannot be deemed the acts of the town, nor by them could any rights be acquired by the town.

"If it is shown that the town had notice that its committee had entered under a license from the defendant corporation, then any use made of the way in question under that license would be deemed to be a permissive use, and would not be adverse to the rights of the defendant, and would not be means of acquiring any right to use the way. If under the license, which this paper undertook to give to the town, to make and use said road and maintain the same until the defendant should give notice to discontinue the same, if the town had notice of that license, and used the way under it, it would acquire no rights by such use, whether that use was in constructing, repairing, or travelling over the way, for however long continued, until there was notice of the revocation of the license, and continuing the use under some other claim, under some other right than that derived from the license. No rights would be acquired, however long used or continued by the selectmen. They having no authority from the town to execute this paper, unless the town is shown to have

had notice of it, any other acts of the town than the acts of these selectmen cannot be affected by anything in this paper.

" Now, the defendant says that the plan referred to in this agreement was found in the custody of the town clerk of Deerfield, bearing upon it the filing of a former clerk of the town, who was clerk at the time of the execution of this license; that the committee to whom it had been given, and by whom it was executed in behalf of the town, were at the time the selectmen of the town; and that you ought fairly to find, as matter of fact, from these facts, that a portion of the agreement itself, to wit, the plan which was a part of it, was in the custody of the town and its officers connected with the acts under it, that the town in fact did have notice of the license and acted under it, and that all of its acts from that time to the time of the obstruction of the roadway in 1883 are to be by you referred, as matter of fact, to a permission obtained in 1855 from the defendant, and are not to be deemed adverse. If you find the town did have such notice and did act upon it, or used the way under a right obtained from that paper, then it is entirely immaterial for how long; and in any event those acts of repairing or reconstructing, in 1855, that were done by the committee who executed this agreement, cannot be treated as acts of the town adverse to the rights of the defendant corporation. The plaintiff contends that at a later period than 1855, after the construction of that way, and by other agents than the committee that executed this agreement, the town repaired the way in question, and that on other and different occasions it used the roadway to carry materials to the burial ground for the repairs of a fence enclosing it, and on one occasion the repairs involved substantially the rebuilding of it. There is also some evidence of the entire construction of a fence around the cemetery, which by some of the witnesses was said to have been done by the town, and all the materials to have been carted over this road in question; and by another of the witnesses, to have been done by contract by a contractor who assumed to do the whole, and he carted his materials over that road, and those were not carted by the town. If that was the case, the acts of the contractor are not the acts of an agent of the town, but having made a contract to rebuild or entirely construct a fence around the

cemetery, getting his material there as he chooses, his use of the way would not be a use by the town.   The town also contends, that for a large number of years it used this roadway in going to and from the burial ground to bury its paupers, and that, in the use of the burial ground for its own town purposes, it passed and repassed over this roadway in question.   Now those were acts of a kind that would, if continuous and uninterrupted and under a claim of right in the town itself, and continued a sufficient length of time, give a right by prescription; but it is an essential element to acquire a right by prescription that the use should be continuous.   It is not sufficient if once or twice, or occasionally, during a period of twenty years, the town should pass up and down this roadway to bury its paupers.   The use of the road by the town for a passageway to the burial ground for the purpose of burying paupers to the number of twelve or fourteen from 1861 to 1883 is not such an open, continuous, uninterrupted, and adverse use as would give a prescriptive right of way to the town, but it is evidence of such use, and in connection with further use may constitute such an open, continuous, uninterrupted, and adverse use; but twelve or fourteen times in twenty years would not be a sufficient continuance to constitute an open, continuous, uninterrupted, and adverse use of the way, by which a right of way was to be acquired, nor would it be evidence of such use, if it was under this permission from the defendant corporation.

" If you find that the town did have notice of the agreement which its committee attempted to make, although the committee had no authority to make it, and entered into the use of the way under rights that the town supposed had been acquired under it, such use would not be, in the assertion of its own rights, adverse to the rights of the defendant, and could not be the basis of acquiring such rights.   You are to take all the evidence together, what the acts of repairing, the acts of hauling fence materials, the use to bury paupers, — how extensive it was.   By giving you instructions in regard to the number of twelve or fourteen paupers, I do not mean to say that there is no evidence of a greater number than that.   It is for you to say how many are proved to have been carried, and it is for you to say whether, taken in connection with all the use that

is shown by the town in its corporate capacity, not any use which individuals may have made of it, whatever their rights or however they got them, but by the town and its agents, whether it has shown such use of the way that it can be said, as matter of fact, to be continuous, open, uninterrupted, and adverse to the rights of the defendant, for twenty years prior to November 1, 1883. If it is, then, notwithstanding the roadway had been extinguished in 1849, the town would have acquired a new right, and would be entitled to recover in this action for this obstruction.

" Upon one or the other of these two grounds the plaintiff must recover, if entitled to recover at all. If it shows by a fair preponderance of the whole evidence, that the original plan of the survey and location was not filed in the office of the clerk of the courts, then the original property rights of the plaintiff were never extinguished. If that was filed, they were extinguished. If the plans were filed, there is no controversy but that the limits of the taking were such as would include the place where the obstructions complained of were placed. That is, there is no controversy that the second track and the extending of the embankment are within the location acquired by the original taking, if there ever was a valid original taking. Now, if you find, upon a fair preponderance of the evidence, that there was no valid original taking, then you are to find for the plaintiff. If you do not find that, but find there was a valid taking, and that the property rights of the plaintiff were extinguished either in 1846 or 1849, it is entirely immaterial which, then you must find for the defendant, unless you find that after 1849 there was twenty years of open, adverse use of this roadway by the town in its corporate capacity. If that is established, then the plaintiff is entitled to recover."

The jury returned a verdict for the plaintiff; and the defendant alleged exceptions to the refusal to give the instructions requested.

*G. Wells*, for the defendant.

*C. C. Conant*, (*S. D. Conant* with him,) for the plaintiff.

FIELD, J. We see no reason to doubt that a town may acquire by prescription a private right of way as appurtenant to a public burial ground belonging to the town. The statutes

for many years past have provided that " each town and city shall provide one or more suitable places for the interment of persons dying within its limits." Pub. Sts. *c.* 82, § 9. Gen. Sts. *c.* 28, § 4. St. 1855, *c.* 257, § 1. As a town may acquire a private right of way from a public way to a public burial ground by grant, it may acquire a similar right of way by prescription. Such a way, although open to use for all persons who have a right to go to and from the burial ground, is not necessarily a public way. It may not be a way for all travellers, but only for those who have rights in the burial ground. Suppose such a way were closed by a gate at the place where it meets a highway, and this gate were kept locked, and only opened by some person in charge of the burial ground for the purpose of admitting persons to it, this would be strong evidence that it was a private way. *Austin's case,* 1 Vent. 189. *Thrower's case,* 1 Vent. 208. *Bateman* v. *Bluck,* 18 Q. B. 870. *Commonwealth* v. *Newbury,* 2 Pick. 51. *Commonwealth* v. *Low,* 3 Pick. 408. *Danforth* v. *Durell,* 8 Allen, 242. *Gordon* v. *Taunton,* 126 Mass. 349. *People* v. *Kingman,* 24 N. Y. 559. *People* v. *Jackson,* 7 Mich. 432.

If the way in the present case is a public way, the remedy for an obstruction is not by an action by the town ; if it is a private way belonging to the town, the remedy is by such an action. There is no evidence that the old way was ever laid out either as a town way or highway, or that this way was altered, or the new way laid out either as a town way or highway. The defendant in its brief speaks of the new way as used for the purpose of travel to the depot as well as to the cemetery, but no such fact appears in the exceptions. So far as appears by the exceptions, the way was only used in going to and from the cemetery. We think that any use made of this way in going to and from this cemetery by the inhabitants of the town, or by persons holding rights in the cemetery derived from the town, and any acts of the town in constructing or repairing the way, were competent evidence to prove that a private right of way, as claimed by the plaintiff, had been acquired by prescription. The rulings upon the admission of evidence offered by the plaintiff to show an adverse use by the town were sufficiently favorable to the defendant. The defendant was entitled to have the whole use

made of the way put in evidence, but it was for the jury to determine whether this evidence showed that it was used as a public or as a private way.

The only exceptions of the defendant are to the refusal of the presiding judge to give the instructions requested. We think that there was evidence for the jury that the plaintiff had acquired a private way by prescription, unless the license put in evidence rendered the use permissive, and that the first request was rightly refused.

As to the second request, it is to be noticed, as the defendant contends, " that the proposed way as shown upon the plan was not a crossing, but provided for the occupation of land of the defendant for the purpose of conveniently reaching the crossing." We see nothing in the case, however, which distinguishes it in respect to the question raised by this request from *Fisher* v. *New York & New England Railroad*, 135 Mass. 107. Whether a right of way can be acquired by prescription across a railroad track, since the passage of the St. of 1853, *c.* 414, § 4, has not been argued ; but although this question has not been actually decided in the case of private ways, there are intimations that this can be done. See *Gay* v. *Boston & Albany Railroad*, 141 Mass. 407 ; *Wright* v. *Boston & Albany Railroad*, 142 Mass. 296. And in the case of a public way this was decided in *Fitchburg Railroad* v. *Page*, 131 Mass. 391, although the effect of this statute was not considered.

The third and fourth requests present questions of more difficulty. The petition of Ephraim Williams and others asked that an alteration be made " in the now travelled road, by carrying the same about the width of the present road to the east, and by commencing the ascent of the hill two or three rods north of the house of Arad Munn." This was asked because the existing road was " unnecessarily steep and difficult of ascent." The inhabitants of the town, at a town meeting duly warned, voted " that the selectmen be a committee to grade the road to the burying ground agreeable to the petition of Ephraim Williams and others," and " that the assessors be authorized and directed to raise a sum not exceeding one hundred and fifty dollars, for the purpose of grading the said road to the burying ground." These votes were authorized by articles in the warrant. The

plaintiff owned the land except that part which it had conveyed to the defendant. The plaintiff had conveyed to the defendant " all of the land of the said town there situate taken by the said railroad company according to the plan of the survey and location thereof filed in the office of the clerk of the courts for the said county of Franklin, to which said plan reference may be had for-a particular description of the land hereby conveyed." No such plan was found in the office of the clerk, and one question in the case was whether any such plan had ever been filed there. The parties make various contentions upon the effect of this deed if no such plan was filed, but there are no exceptions to any rulings of the court upon this part of the case. If there had been a valid location by the defendant, or if the deed conveyed the land within any defined location, the rights of the plaintiff in the old road over the location, or the land conveyed were extinguished. There is nothing in the petition of Ephraim Williams and others indicating that the alteration asked for would make it necessary to enter upon any land owned or occupied by the defendant, and the votes of the town did not authorize them to do this. The third request ought not therefore to have been granted.

On May 28, 1855, after the votes of the town had been passed, two of the three selectmen and the president of the defendant corporation executed the agreement which appears in the exceptions. Whatever may be the effect of the deed, the correctness of the plaintiff's fourth request, and of the instructions of the court given upon the same subject, must be tested by assuming that the jury may have found that the defendant owned or occupied as included in its location the land constituting a part of the new way, and obstructed this new way upon its own land or location. So far as this way was upon the land of the plaintiff, if it was a private way, the defendant is of course liable for obstructing it there. The court correctly ruled that the acts of the selectmen in building the road, if done under this agreement, were not adverse to the defendant, although they acted as a committee appointed by the town. The selectmen by virtue of their office had no authority whatever to construct a private way for the use of the inhabitants of the town. The question is of the effect of this agreement upon the rights of the plaintiff. The

plaintiff is asserting a right in the land or location of the defendant, which it claims to have acquired, in its corporate capacity, as its property. To acquire a right of way over the land of another by prescription, the user must be adverse, that is, under a claim of right, and it must be acquiesced in by the owner of the land. It is not necessary that the claim of right be expressly made, or that the acquiescence be declared. If the user be of such a character that it may reasonably be inferred to be adverse, and if it be known to the owner of the land, and he does not interrupt it or object to it, a prescriptive right may be established. If the owner of the land, by reason of insanity or other disability, is incapable of acquiescing, or if the user is concealed and unknown to the owner of the land, a prescriptive right is not acquired. If the user is open, continuous, and of such a character that it may reasonably be inferred to be adverse, it has been held that the knowledge of the owner of the land may be inferred from these circumstances, and we think that if the user is adverse, and is so open and notorious that the owner of the land ought to have known of it, his acquiescence may be presumed, even if it is not found that he actually knew of it.

Undoubtedly, assent either expressed or in the mind is not necessary to constitute acquiescence. One reason for the modern law of prescription is, that the long-continued enjoyment of a privilege in the land of another, under a claim of right, ought not to be disturbed, if the owner of the land has unreasonably slept upon his rights. We are not, however, aware of any case in which it has been held, that, when the owner of land, in dealing with an agent, has expressly granted a license to the principal to construct a way over his land, and the way has been constructed by the agent for his principal under the license, and the principal has used the way in a manner consistent with the license, although without knowledge of it, a right of way has been acquired by prescription. The agent may have exceeded, and in the case at bar did exceed, his authority in making the agreement, which operates as a license; and, if the defendant were proceeding to enforce the agreement against the town, the want of authority would be fatal; and the town could not rely upon the agreement except by ratifying the acts of its agent. The plaintiff here does not rely upon the agreement,

and the defendant does not necessarily rely upon it as a substantive matter of defence. If the plaintiff had no notice or knowledge of the agreement, then the defendant relies upon it as a fact qualifying the inference that otherwise might be drawn from its conduct in not disturbing the plaintiff in its use of the way. The defendant in effect says that it believed that the plaintiff was using the way under this agreement, and therefore it did not object to or interrupt the use. If this agreement was filed in the town clerk's office, we think that this would be notice to the town of the agreement, and if the subsequent use was consistent with the agreement, we think that it would be presumed to be under the agreement, unless the defendant had notice or knowledge to the contrary. But if the town had no notice or knowledge of the agreement, then it may have used the way under a claim of right, while the defendant may have believed, and reasonably believed, that the town was using the way under its permission, and for this reason may have refrained from preventing or interrupting the use. It is said in *Edson* v. *Munsell*, 10 Allen, 557, 568 : " In order to require the jury to presume a grant, the possession or use must have all the qualities of a prescription ; it must be open, adverse, uninterrupted, and with the acquiescence of the owner. Any fact which directly affects the probability of such acquiescence must be submitted to the jury to assist them in determining whether such a presumption should or should not be made."

In *Smith* v. *Miller*, 11 Gray, 145, the plaintiff bought his land from one Phelps, in 1832, and the defendant, whose land was on the opposite side of the highway, claimed title to his land under one Smith, who owned it from 1828 to 1835. Smith, in 1829 or 1830, obtained permission from Phelps to dig a drain from the land of Phelps across the highway and through his own land. The action was for obstructing this drain, and the plaintiff contended that, whether the use of the drain by Phelps was permissive or not, yet if the plaintiff when he bought the land in 1832 found a drain there, and continued to use it for twenty years, such use would give him a prescriptive right. It does not appear in the case whether the plaintiff knew that the drain was originally constructed for the benefit of Smith and by the permission of Phelps. The court said, that if Smith constructed

the drain, for his own benefit, with the consent of Phelps, who was then the owner of the plaintiff's land, "the flowing of the water through it and over the defendant's land must be considered to have been afterwards permissive and in accordance with the original agreement of the parties, until the plaintiff asserted some claim or exercised some right indicating that he made or intended to assert a claim adverse to the right of the defendant or of his predecessors."

In the present case, we are of opinion, that, if the defendant silently submitted to the plaintiff's use of the way, under a belief that this use was permissive and in pursuance of the agreement made with the plaintiff's agents, this fact is material upon the question of acquiescence, and that the fourth request should have been granted, with the provisos that the use of the way by the plaintiff was not inconsistent with the agreement, that the defendant believed that the plaintiff was using the way in pursuance of the agreement, and that this was a reasonable belief under all the circumstances shown. The request in the form in which it was made is not accurate and complete, particularly if the town was not shown to have had knowledge or notice of the agreement, and it should have been modified substantially as we have suggested; yet the instructions given on this point were not all that the case required, and might have misled the jury, and for this reason we are of opinion that there ought to be a new trial. *Blake* v. *Everett*, 1 Allen, 248. *Carbrey* v. *Willis*, 7 Allen, 364. *Hannefin* v. *Blake*, 102 Mass. 297. *Rotch's Wharf Co.* v. *Judd*, 108 Mass. 224. *Elwell* v. *Hinckley*, 138 Mass. 225. *Dodge* v. *Stacy*, 39 Vt. 558, 568. *Root* v. *Commonwealth*, 98 Penn. St. 170. *Thompson* v. *Pioche*, 44 Cal. 508.

The fifth request was rightly refused; if the plaintiff had a right of way, the defendant showed no right to fill up the way by an embankment.

The plaintiff in its declaration described a way leading from a highway across its own land and the land of the defendant to a burial ground. The sixth request, as we understand it, asked the court to rule that the plaintiff must prove a right of way as laid in the declaration from the highway to the burial ground, and that the plaintiff could not recover if it proved a right of way for only a part of this distance. If this is the law, (see

1 Greenl. Ev. §§ 71, 72,) still we think that, from the charge of the presiding justice, the jury must have understood that the plaintiff, to prevail, must prove a right of way throughout the whole distance as claimed in the declaration.

*Exceptions sustained.*