JAMES H. H. HEWETT, PETITIONER FOR CERTIORARI,

*vs.*

COUNTY COMMISSIONERS.

Knox.    Opinion February 18, 1893.

*Railroad Crossings.    County Commissioners.    Record.    Practice.    R. S., c. 51, § 21; c. 102, § 14; Stat. 1864, chs. 234–246.*

Of the three methods of procedure open to the defense upon petitions for *certiorari.*

County Commissioners, in assessing damages for land taken by the location of a railroad, have no power to establish private crossings other than farm crossings. They cannot otherwise limit or restrict railroads in the free enjoyment of their roadways within their respective locations.

ON REPORT.

This was an action of *certiorari* to bring up the record made up by the Court of County Commissioners, for Knox County, on the petition of the Lime Rock Railroad Company for assessment of damages on land taken by said railroad belonging to the estate of Samuel Pillsbury, late of Rockland, deceased, of whose estate the petitioner is administrator.

The case is stated in the opinion.

*Mortland and Johnson*, for Petitioner.

*C. E. and A. S. Littlefield*, for County Commissioners.

HASKELL, J.    *Certiorari* to quash the record of the county commissioners of Knox County, in assessing damages to land from the location of the Lime Rock Railroad.

To petitions for the writ of *certiorari*, a copy of the record sought to be quashed should be annexed, and notice thereon ordered to the tribunal whose record is sought to be quashed, and in the discretion of the court, to such persons as may be interested in the result, who may appear and answer and be

subject to costs. R. S., c. 102, § 14. At the hearing, three methods of procedure are open to the defense.

First : If the record is thought to be sufficient, to submit the cause to the court, as upon demurrer, then, if the record fails to show jurisdiction on the part of the court entering the judgment, the writ should issue as a matter of right, and refusal would be error and exceptionable ; but, if it simply shows inconsequential errors, that are harmless, or might palpably be corrected by amendment, the writ should be denied. *Hayford* v. *Co. Commissioners,* 78 Maine, 153.

Second : If the record be defective in not reciting facts that appear from the proceedings, or that were actually adjudged and omitted inadvertently from the record, to file, under oath, an answer setting up such facts, and the answer is conclusive evidence of the facts thus recited, but not of the legal conclusions to be drawn from them. *Levant* v. *Co. Commissioners,* 67 Maine, 429 ; *King* v. *Andrews,* 78 Maine, 239. If the facts so set up show that an amended record would sustain the jurisdiction of the court over the matter before it, leaving, perchance, only defects that do not materially affect the substantial rights of the parties interested, the writ should be denied, otherwise it should issue : Or, if ordered to issue, the court below may send up an amended record according to the facts in the case ; *Dresden* v. *Co. Commissioners,* 62 Maine, 365 ; *Lapan* v. *Co. Commissioners,* 65 Maine, 160 ; for when the writ issues, the sufficiency of the record returned, in answer to the writ, must be determined from an inspection of it. *Levant* v. *Co. Commissioners, supra.*

Third : Matters in estoppel or bar of the writ may be pleaded by way of answer or included in the answer last before considered. Sometimes such matters appear from the record sent up in answer to the writ, and then operate the same as if interposed by answer. *Phillips* v. *Co. Commissioners,* 83 Maine, 541.

In this case, after hearing upon the petition, the court, being in doubt from the answer as to some of the facts set up in defense, the defendants not being at hand to verify a more particular state-

ment of them, and to give progress to the case, ordered the writ to issue, and, as is within the personal knowledge of the justice who draws this opinion, without prejudice to the defendant's right to return, in answer thereto, an amended record. *Chapman* v. *Co. Commissioners*, 79 Maine, 267.

The defendants made no formal return of their record to the writ as regularity in procedure required them to do; but, instead thereof, their original record with the amendment to it was introduced in evidence at the trial, and the cause continued on report. No objection to this irregularity is pressed, and, therefore, the case will be considered as if the record had been returned in due course of procedure.

The first objection to the original record is that the award of damages in favor of the estate of the late Samuel Pillsbury, deceased, does not sufficiently designate to whom they shall be paid. This objection is obviated by the amendment, making them payable to the plaintiff in his official capacity as administrator of the deceased owner of the land.

The remaining objection is that the award of a road as " now used to and from " the kiln as a crossing of a railroad was beyond the power of the commissioners to give, and, therefore, not binding upon the railroad company, which might obstruct or prevent the use of it at any time; so that damages assessed upon the theory that the road was secure for the future use of the kiln, when it was not, did not give compensation, and cannot be assessed to do so in petitioner's appeal now pending, until the permanency of the road be first determined.

This question might, perhaps, be determined on the trial of the appeal on the assessment of damages, but it can just as well be considered and settled here, and thereby fix the rule upon which that trial may proceed.

Railway companies, by locating their roads without excepting and reserving crossings for the use of the land owner, absolutely cut off all such rights, no matter how great the necessity for them may be, and damages are to be assessed upon that theory. *Old Colony Railroad* v. *Miller*, 125 Mass. 1; *Presbrey* v. *Old Colony & Newport Railway Co.* 103 Mass. 1; *Mason* v. *Knox*

*& Lincoln R. R. Co.* 31 Maine, 215 ; *Bangor & Piscataquis R. R. Co.* v. *McComb*, 60 Maine, 290.   When, however, such crossings can be required and established by judicial authority, the convenience thus afforded must be considered in awarding the pecuniary damages.   R. S., c. 51, § 21.

In this case, the county commissioners did consider and award that the railroad company should " keep open the road now used to and from the " kiln of petitioner's intestate.   Had they power to do it?   The present statute, copied from the revision of 1871, confers the power to establish " cattle guards, cattle passes and farm crossings," purely ways of an agricultural nature, and to serve the uses of a farm.   The original legislation was in 1864, chapters 234-246.   Chapter 246 seems to have conferred more enlarged powers upon the commissioners.   Its provisions are of a most general character, and somewhat vague and indefinite.   The revisors, in 1871, must have considered that they included in their revision all the essential powers conferred by these statutes.   A second revision made no change ; nor has any change of the plain reading of the statute of 1871 been attempted by the legislature in these last twenty years.   It would be a stretch of judicial construction to read into the present statute a meaning so much wider than its plain language fairly imports.   That limits the powers of the commissioners, in this behalf, to crossings needed for agricultural purposes only. It is not broad enough to confer powers that may require railroads to maintain private crossings for any landowner, regardless of the use and necessity.   These companies, when passing through cities and towns, can best determine from the necessity of their business, when they locate their roads, where and what crossings for private and commercial uses it is expedient for them to establish and maintain, or when they had better pay large damages, perhaps, to be rid of all private interference.

Private ways across railroads may be secured by reservation, grant, agreement or adverse use.   *Gay* v. *B. & A. Railroad Co.* 141 Mass. 407 ; *Wright* v. *B. & A. Railroad Co.* 142 Mass. 296 ; *Deerfield* v. *Connecticut River Railroad*, 144 Mass. 325 ; *Turner* v. *Fitchburg Railroad Co.* 145 Mass. 433 ; *Fitch-*

*burg Railroad Co.* v. *Frost,* 147 Mass. 118. It would seem, therefore, that damages assessed by county commissioners, upon the consideration of the existence of ways determined by them and mentioned in their records, and paid by the railway companies, would work an estoppel on such companies from disputing the existence of such ways, or from seeking to quash the record giving them, and become equivalent to a contract for their existence. Perhaps these rights might be extinguished by a new location, followed by a new assessment of damages.

It is settled law, that a record may be affirmed in whole or in part, in proceedings of this nature. *Minot* v. *Co. Commissioners,* 28 Maine, 121 ; *Commonwealth* v. *Blue-Hill Turnpike Corporation,* 5 Mass. 420 ; *Commonwealth* v. *West Boston Bridge,* 13 Pick. 195. Inasmuch as we know that an appeal is pending in this court for a re-assessment of the damages in this case, we conclude not to quash the whole assessment, but only that part of the record restricting the railroad in the free use of its easement and providing for the road to and from the kiln. The remainder had best be affirmed, but without costs.

*Judgment accordingly.*

PETERS, C. J., WALTON, LIBBEY and FOSTER, JJ., concurred.