### FRANCIS SMITH *vs.* INHABITANTS OF LINCOLN.

Middlesex.    January 21, 1898. — March 8, 1898.

Present: FIELD, C. J., ALLEN, KNOWLTON, LATHROP, & BARKER, JJ.

*Waterworks — Town — Taking of Land — Non-use or Non-occupation — Abandonment — Law and Fact — Public Use — Prescriptive Title.*

Where land has been taken and used by a town for its waterworks, it cannot be ruled, at the trial of a writ of entry to recover the land, that the non-use or non-occupation of the land will prevent the town from acquiring a title by prescription, but it is a question for the jury whether, on the evidence, there was any intention on the part of the town to abandon the waterworks.

Although a town which has constructed waterworks as a municipal corporation makes no use of the water for the purpose of supplying its public buildings or hydrants in the streets, if any inhabitant of the town along the line of the pipes who desires it can obtain water, the use is public.

If the water commissioners of a town, which has constructed waterworks on land taken for that purpose, acting under the authority of a vote of the town, make a contract with water takers, who take possession of and run the works for a term ·of years without expense to the town, any inhabitant on the line of the pipes who applied for water being supplied with it, this is not such an interruption of the town's use of the land as will bar a prescriptive claim to it.

WRIT OF ENTRY, to recover a parcel of land in Lincoln. Plea, *nul disseisin,* with a specification of defence that the tenant, acting under St. 1872, c. 188, took and held the land for the purposes of its waterworks, and had acquired a prescriptive right therein. At the trial in the Superior Court, before *Sherman,* J., the jury returned a verdict for the tenant; and the demandant alleged exceptions. The facts appear in the opinion.

*G. M. Palmer,* for the demandant.

*E. C. Bumpus & E. I. Smith,* for the tenant.

LATHROP, J. It is unnecessary in this case to consider whether there was or was not a valid taking by the tenant of the

demandant's land under the St. of 1872, c. 188.    The town duly accepted the act.    In November, 1873, it voted to choose water commissioners, and elected them.    In 1874, it began to build its works, and in the spring of 1875 it occupied the demanded premises with its engine house and other appliances of a water plant.    It ran a pipe into Sandy Pond from the premises, and first diverted and distributed the waters of the pond through its pipes to the inhabitants of the town in September, 1875.

By the St of 1872, c. 188, §§ 2, 11, the town had the right to take and hold, " by purchase or otherwise," all necessary lands for raising, etc. the waters of the pond.    As it had the right to purchase, it could also acquire a right by prescription. *Deerfield* v. *Connecticut River Railroad*, 144 Mass. 325.    *Boston* v. *Richardson*, 105 Mass. 351.    See also *Lund* v. *New Bedford*, 121 Mass. 286, 290.

The jury specially found that the tenant prior to January 18, 1896, the date of the writ, had acquired a prescriptive right to use the demanded premises, and also the prescriptive right to use the waters of the pond, as against any one except the Commonwealth, for the purposes set forth in the St. of 1872, c. 188.

There was abundant evidence to warrant these findings, unless certain objections taken by the demandant show that the possession was not adverse or continuous for the required length of time.

The demandant contended, in the first place, that until February, 1876, he was not aware that the tenant claimed to be in possession of the premises by any title, or otherwise than by his permission, and introduced evidence to this effect.    But this evidence was contradicted by the tenant, and it put in evidence tending to show that the demandant knew as early as February, 1875, that his land had been taken ; and that the chairman of the water commissioners then tendered him the sum of fifty dollars in payment of his damages occasioned by the taking. This issue of fact was specially submitted to the jury, who answered it in favor of the tenant.

The next contention is that the town abandoned the works. The evidence bearing upon this point was as follows.    At the town meeting held in March, 1876, under an article in the warrant, " To see if the town authorize and direct the water

commissioners to keep the waterworks in operation during the coming year," the following vote was passed: " Voted, the water commissioners be directed to keep the waterworks in operation the coming year, provided they can get an income from the water-works which in their judgment will be sufficient to pay the running expenses." On May 18, 1876, the board of water commissioners voted " that we inform the engineer forthwith that he is discharged from further duty as engineer of the Lincoln water-works." This vote was communicated to the engineer. A minority of the board ordered the engineer to continue pumping, and he continued pumping during forty-two working days, until October 6, 1876, and no water was pumped again until July 1, 1877. There was evidence that the town paid the bills for the pumping between May 18 and October 1, 1876. There was also evidence that on October 6, 1876, the reservoir was full of water; that at no time was it wholly empty; and that there was no time when the water takers were deprived of the use of the water. There was also evidence that during the period from October, 1876, to July, 1877, the doors of the engine house were locked, and the keys were in the possession of the water commissioners, or of the engineer, who made frequent visits to the engine house and took care of the machinery and boiler.

On this evidence the question for the jury was whether there was any intention on the part of the town to abandon the waterworks; and the jury were so instructed. The court could not properly rule, as requested by the demandant, that the non-use or non-occupation would prevent the town from acquiring a title by prescription. In *Dana* v. *Valentine*, 5 Met. 8, 13, where there had been a non-use for two years of the twenty, it was said by Mr. Justice Wilde: " The mere ceasing to enjoy an easement does not destroy a party's right, unless it appears from the facts and circumstances that he intended to abandon and not to resume it." See also *Crossley* v. *Lightowler*, L. R. 2 Ch. 478, 482; *James* v. *Stevenson*, [1893] A. C. 162.

The next contention is that the works were used for the benefit of private persons only. The demandant assumes the extreme position that if until 1880 the town, as a municipal corporation, made no use of the water for the purpose of supplying its public buildings or for purposes of furnishing water to

hydrants in the streets, there was no public use, although every inhabitant of the town along the line of the pipes could obtain water if he desired it. We have no doubt that the use was public, although the town, as a municipal corporation, did not see fit to use the water in the way designated.

At the town meeting held in March, 1877, the following vote was passed: " That we instruct our water commissioners to run our waterworks, or cause them to be run, by putting them into the hands of a committee chosen by the takers of water, provided said commissioners shall receive from said takers, or any other parties, good and sufficient guarantee that all expenses of running repairs and wear of said works shall be paid, relieving the tax payers of Lincoln from any liabilities arising from the running of said waterworks. And further, the parties shall bind themselves to run the said works, and deliver them back to the town at a future date not exceeding ten years, in as good repair and condition as when taken by them, except ordinary wear."

Acting under this vote, the board of water commissioners made a contract with the water takers, who took possession of the waterworks on July 1, 1877, and ran them for ten years. During this period the waterworks were run without expense to the town, except interest on the bonds which had been issued ; and any inhabitant on the line of the pipes who applied for water was supplied with it ; water commissioners were duly elected each year, and reports made by them to the town ; and various votes of the town were passed relating to the waterworks.

The demandant contends that this was an interruption of the town's use of the land, and bars the claim by prescription. But what was done was, in the language of the vote, " causing the works to be run." The purpose of the agreement was to relieve the town from the expense for a stated period of time. It could not be ruled, as matter of law, that the town by what it did abandoned the works, or that the right by prescription was barred. The committee of water takers was acting under the town. It does not appear that they acted for their private gain. If, as the demandant contends, the agreement was a lease, then the possession of the tenant was the possession of the landlord. But whether it was a lease or not, the committee derived its authority from the town, and the town purported to derive its

authority from the statute. The town, therefore, did not cease to occupy and use by itself, or by those acting under its authority, the land in question.

In this view of the case, it becomes unnecessary to consider the various exceptions which relate to the question whether there was a valid taking.                    *Exceptions overruled.*