ATTORNEY GENERAL *vs.* GEORGE H. ELLIS.

Middlesex.   January 13, 1908. — February 29, 1908.

Present: KNOWLTON, C. J., HAMMOND, LORING, SHELDON, & RUGG, JJ.

*Great Pond.   Crystal Lake.   Prescription.   Commonwealth.   Evidence,* Presumptions and burden of proof.

In good faith and in the belief that a certain great pond was public domain, the commissioners of inland fisheries, acting on behalf of the Commonwealth and assuming to act under St. 1869, c. 384, § 9, which provided that they might, in such capacity, " lease any great pond . . . for the purpose of cultivating useful fishes," in 1870 made a lease of the pond of more than twenty acres in area which in 1634 had been granted to one whose descendants still possessed the grant by an unbroken chain of title.   The lease provided that the lessees should keep the pond stocked with black bass, and the lessees took possession and occupied for twenty years thereunder.   *Held,* that the provision of § 8 of the same chapter, that " the fishery of any pond, the superficial area of which is more than twenty acres, shall be public, except such as may have been specially granted by law," did not prevent the act of the commissioners from operating as an assertion of a

right of the public to the pond, which, coupled with possession under the lease for twenty years, was *prima facie* sufficient to show the acquisition of a right in the public by prescription, which right belonged to the Commonwealth.

At the hearing upon a bill in equity under St. 1888, c. 318, § 6, now R. L. c. 96, § 25, by the Attorney General against one who was encroaching below high water mark upon a great pond known as Crystal Lake in Newton, in which the Attorney General sought to enjoin such encroachment, the defendant admitted the acts complained of, but contended that the pond was not subject to the provisions of the statute. It appeared that the Court of Assistants held in Boston in 1634 made a valid grant of land to one Haynes which included the great pond, which land, by an unbroken chain of title, had come into the possession of persons living at the time the suit was begun, but, for at least sixty years before the suit, the pond had been used by any one who desired to do so for boating, bathing, fishing and the cutting of ice, although not to such an extent that a prescriptive right thus to use it had accrued to the public from such use alone; that no objection to such use or any claim to the control of the pond had been made by any one representing the Haynes interest; that, more than twenty years before the commencement of the suit, the Commonwealth, by its commissioners of inland fisheries, had executed to certain parties a lease of the pond for a term of twenty years, which contained strict provisions and limitations upon the acts of the lessees in and upon the pond and in the use thereof and provided that they should thoroughly stock it with black bass. The commissioners in giving the lease acted in good faith upon the belief that the pond was a part of the public domain. The lessees took possession under the lease and held possession during its term. *Held*, that findings that the lease was a declaration and claim of title on the part of the Commonwealth, and that, upon the occupancy under it for twenty years together with the other use by the public of the pond for sixty years, a title to the pond and its waters and the right to control them had become vested in the Commonwealth, were warranted; and consequently that the suit might be maintained and the defendant should be enjoined.

Where a lease to certain persons by the Commonwealth through its commissioners of inland fisheries of a great pond in 1870, and possession and occupation thereunder for twenty years are relied on by the Commonwealth to prove a prescriptive right of the public to the control of the waters of the pond as against those to whom had come by an unbroken chain of title a grant of the pond made by the Court of Assistants in 1634, it is immaterial that the lease was not recorded as required by Gen. Sts. c. 89, §§ 1, 3, and that no notice of the lease or the acts of the lessees thereunder had been given to those holding the grant.

INFORMATION in the nature of a bill in equity filed in the Supreme Judicial Court for the county of Middlesex February 1, 1896, by the Attorney General at the relation of the board of harbor and land commissioners under St. 1888, c. 318, §§ 1, 2, 6, alleging that the defendant had filled in the land and made encroachments below high water mark on the waters of a great pond in Newton known variously by the names of Wiswell's Pond, Silver Lake, Baptist Pond and Crystal Lake, and praying that the defendant be ordered to remove the filling and be enjoined from further encroachments.

The case was referred to a master who made a report, the substance of which is stated in the opinion.    Among his findings were the following, which are referred to in the opinion :

" I find that the grant of John Haynes was valid, and that upon the facts there has been no forfeiture of the grant under the ordinance of 1634, or the act passed in 1716, relating to the forfeiture of unused grants, hereinbefore referred to.    If the Commonwealth through its officials, the commissioners on inland fisheries, had not made a declaration of its title by granting the lease referred to, and action had not been taken upon the same, I should be somewhat doubtful as to whether the general use made by the public for many years of the pond would be in itself sufficient to oust any one having the right to claim under the Haynes grant from the title in the same.    But the commissioners on inland fisheries, acting, as I believe, in good faith, gave this lease upon the belief that the pond was a part of the public domain, and, while the lessees were limited in their use of the same, the indenture contains, as I think in effect, a declaration and claim of title on the part of the Commonwealth ; and the occupancy under the same for twenty years, coupled with the fact of the other use made of it by the public, as herein stated, during the past sixty years, satisfies me that the title to the pond and its waters, and the right to control the same, has become vested in the Commonwealth by prescription.    It is probable, as I think, that, owing to the age of the grant, the fact that no one made any claim under it for many years, so far as appears, and the use made of the pond by the public, the existence of the grant in 1870, or even later, may not have been known to the commissioners, who may have assumed that this pond had been included in the ordinance of 1641–47, but, whether ignorant of this or not, they, in terms, treated it in the lease as being the property of the Commonwealth.    So little was this grant known, that the Supreme Judicial Court, in at least two of its opinions, has stated that it appeared by the records that only one pond had been so granted prior to 1641, and that was the Humfrey pond, mentioned in this report.

" I agree with the contention of the defendant, that the Commonwealth must by R. L. c. 96, § 27, establish a title in the pond in itself before it can proceed under the provisions of § 25 ;

but, as I find that it has so established a title by prescription, it seems to me that the plaintiff can take its remedy under the bill of complaint."

Other findings of the master are stated in the opinion.

Both the plaintiff and the defendant filed objections and exceptions to the report. Those of the plaintiff were twenty-four in number and, in substance, related to the testimony of a witness; to findings that there had been " no forfeiture of the Haynes grant," but that it had " come down to the present owners," " children of Governor Haynes's second wife," " by a proper chain of title " ; to a refusal to rule that there had been a dedication of the pond to the public, and to the ruling that by R. L. c. 96, § 27, the Commonwealth must establish a title in the pond in itself in order to maintain this bill. The plaintiff's last exception is as follows: " As a general exception to the master's report, the plaintiff says this cause was tried upon the theory that the title to said pond had been acquired by the Commonwealth or by the public by dedication thereof to public use. A reading of the evidence reported will show that this contention of the plaintiff was regarded as of little importance by the master; that the evidence relating thereto, although undisputed, was not given due weight and consideration; that the master, under the plaintiff's objection, refused to find that a dedication to the public had been made out, and even went so far as to rule as a matter of law that there was no sufficient evidence to warrant a finding of such dedication, and has ruled both as a matter of fact and of law that the undisputed facts in the case were insufficient to make out title by dedication. Furthermore, upon the defendant's requests, the master has specifically found that the title of the State must rest solely upon its rights by prescription, and that there has been no dedication of the pond and no evidence sufficient in law to warrant a finding of dedication. The plaintiff therefore says that upon the whole report it is apparent that the claim of dedication has not been given due consideration, and that the findings and rulings with reference thereto made under objection are erroneous, and the plaintiff excepts thereto."

The defendant's exception was " for that the master found that the title to the pond referred to in the bill, and its waters

and the right to control the same, had become vested in the Commonwealth by prescription, because of user by certain private individuals and others, as set forth in the report, and especially because of a certain lease, referred to in the report, executed in the year 1870 by the Commonwealth's commissioners of inland fisheries; neither of which ought to be or is sufficient in law or upon the evidence to vest the title of said pond and its waters, and the right to control the same, in the Commonwealth."

The case was heard on the exceptions to the master's report before *Rugg*, J., who overruled all the exceptions and reported the case for the consideration of the full court.

*D. Malone*, Attorney General, & *J. F. Curtis*, Assistant Attorney General, for the plaintiff.

*T. W. Proctor*, for the defendant.

SHELDON, J.    This information was filed by the Attorney General at the relation of the board of harbor and land commissioners, to restrain the defendant from making encroachments into a pond in Newton Centre, called Wiswell's Pond, Crystal Lake, and by other names, claimed by the plaintiff to be a great pond and subject to the provisions of St. 1888, c. 318, now embodied in R. L. c. 96.    The defendant contended that the pond was not subject to the provisions of this statute, on the ground that the pond had been granted in 1634 to John Haynes by the Court of Assistants, and, having been thus appropriated to a private person before the ordinance of 1647, was private property and was within the exception stated in that ordinance and in the St. of 1888, c. 318, § 1, and R. L. c. 96, § 27.

The master to whom the case was referred has found that Wiswell's Pond is a great pond, covering in its natural state more than twenty acres of land.    The defendant owns a parcel of land bounded on the pond, upon which he was and is carrying on an ice business.    He had filled the land and made encroachments upon the waters of the pond below its high water mark, such as to interfere with the use of the waters and the soil of the pond in that locality.    He had received no authority to do this from the General Court or from the board of harbor and land commissioners; it was not done in a manner sanctioned by or under any license from that board.    He had not in himself,

either under the Haynes grant or otherwise, any title to the waters of the pond or any right of control over them. He had not acquired any adverse right to cut ice in the pond, or any other adverse rights.

As to the title to the pond, the master found and reported that at a Court of Assistants held in Boston April 1, 1634, a valid grant of a thousand acres of land and of this pond was made to John Haynes, and that there had been no forfeiture of this grant. There was evidence that the pond had been used for at least sixty years for boating, bathing and fishing, and the cutting of ice by any one who cared to do so; and that no claim had been made by any one, either representing the Haynes interest or any one else, to control the same; that at different times some bath houses had been put upon the shore, and that at one time, when there was a drought, some attempt was made to use this water, and that the water had been used otherwise for baptismal purposes. In 1883 the city of Newton appropriated the sum of $500 to improve the shore of the pond, and this was expended for that purpose. But the master did not find that there had been any dedication of the pond to the public by its owners; and, though somewhat doubtful upon this question, he has not found that the general use of the pond made by the public for many years was in itself sufficient to oust any one having the right to claim under the Haynes grant from his title thereto.

But on September 12, 1870, the Commonwealth, by its commissioners on inland fisheries, executed a lease of the pond to certain parties for a term of twenty years. This lease is set out in full in an exhibit attached to the master's report, and its contents need not be here stated further than to say that it contained strict provisions and limitations upon the acts of the lessees in and upon the pond and in the user thereof, which the lessees covenanted to observe; and provided that they should thoroughly stock the pond with black bass. The lessees took possession under this lease, and held such possession during its term of twenty years. The master found that this lease was given by the commissioners on inland fisheries acting in good faith upon the belief that the pond was a part of the public domain; that it was a declaration and claim of title on the part of the Com-

monwealth; and, upon the occupancy thereunder for twenty years together with the other use of the pond made by the public during the past sixty years, that the plaintiff had shown that the title to the pond and its waters and the right to control the same had become vested in the Commonwealth by prescription.

If we assume for the purposes of this case, that the master was right in ruling that the plaintiff, in order to maintain this information, must show a title in the Commonwealth, under R. L. c. 96, §§ 25, 27, the principal question to be considered is that raised by the defendant's exceptions to the master's report. The defendant's contention is that upon the facts found by the master as to the lease given by the commissioners on inland fisheries and as to the use made of the pond by the public for the last sixty years, he had no right to find that the Commonwealth had acquired a title by prescription. In spite of the ingenious argument of counsel for the defendant, we do not understand that the master rested his conclusion solely upon the lease and the acts done under it. He found indeed that the general use made by the public and by individual members of the public was not by itself sufficient to show a dedication, or to oust from his title any one claiming under the Haynes grant, and that without the lease and the possession had thereunder a title by prescription would not have been shown; but this would not prevent him from considering all the evidence together, and giving to the whole of it an effect which perhaps no single part of it would have produced upon his mind; and it seems clear to us that this is what he intended to state in his report that he did.

No claim is made that this lease was not properly given under the authority conferred upon the commissioners by St. 1869, c. 384, § 9, then in force, except that the lease was forbidden by § 8 of that act, because this pond had been specially granted by law. But the language of § 8 does not forbid a lease under § 9, and the very act of giving the lease was an assertion of the right to do so, as in *Murphy* v. *Commonwealth*, 187 Mass. 361. All disseisin in the beginning is tortious and unlawful; but this does not prevent the gaining of a right, if the tortious and unlawful possession is allowed to continue for a sufficient length of time. There is nothing in this objection. The lessees took and maintained possession under the lease for twenty years. This is

*prima facie* sufficient to show the acquisition of a title by prescription or adverse user. R. L. c. 202, § 20. *Watuppa Reservoir Co.* v. *Fall River,* 154 Mass. 305, 309. Nor is there any doubt in this Commonwealth that the public may acquire rights by prescription; and this right must belong to the Commonwealth itself as well as to any municipal corporation or other public body, or the individual members of the general public. *Attorney General* v. *Vineyard Grove Co.* 181 Mass. 507. *Attorney General* v. *Abbott,* 154 Mass. 323, 328. *Deerfield* v. *Connecticut River Railroad,* 144 Mass. 325. *Coolidge* v. *Learned,* 8 Pick. 503. No doubt the possession which operates such a result must be not only actual, but open, adverse, exclusive and uninterrupted, as stated in the cases cited by the defendant. *Pollard* v. *Barnes,* 2 Cush. 191. *Kennebeck Purchase* v. *Call,* 1 Mass. 482. *Hawk* v. *Senseman,* 6 Serg. & R. 21. But the evidence as to this is not reported; and it must be presumed that the master found the possession to be of the character which has been stated.

Nor is it material that this lease was not recorded. No rights of third persons claiming under any subsequent grant are in question. The acts of the Commonwealth and of the lessees whom it put into possession are alone of importance. It is also immaterial that notice of the lease and of the acts of the lessees under it was not given to any one claiming under the Haynes grant. If there was any person in existence making such a claim, which appears to be at least doubtful, yet actual knowledge by him of the adverse user was not necessary. *Deerfield* v. *Connecticut River Railroad,* 144 Mass. 325, 338. *Gray* v. *Cambridge,* 189 Mass. 405, 418.

The other uses found to have been made of the pond by the general public were of such a character as to be entitled to consideration. *West Roxbury* v. *Stoddard,* 7 Allen, 158, 166, 167. That the master did not regard the evidence of these uses, though running through more than sixty years, as sufficient to sustain the burden of proof which he ruled was upon the plaintiff, did not, as we have already said, preclude him from adding its effect to that of the other evidence.

Accordingly, the defendant's exceptions must be overruled; and it is not necessary to consider any of the many exceptions

taken by the Attorney General; for, if they were all overruled, yet upon the terms of this report he would be entitled to a decree.

*Decree for the plaintiff.*