### TIMOTHY GORDON *vs.* CITY OF TAUNTON.

Bristol. Oct. 25, 1878. — March 3, 1879. ENDICOTT & LORD, JJ., absent.

In an action of tort against a city for breaking and entering the plaintiff's close in 1877, and removing a fence therefrom, the plaintiff claimed title by adverse possession, and put in evidence that he enclosed the land with a fence in 1855, and maintained the fence until the trespass complained of. The defendant's evidence tended to show that, for a period of more than twenty years, down to 1855, the land was unenclosed, openly used by the public and reputed to be a part of the common; and that in 1869 the superintendent of streets removed the fence. The defendant requested the judge to rule that the fact that the land was left open and unenclosed, and was used by the public for a period of twenty years, was sufficient to create an easement in it, either for the public or for the city, and, so long as such easement existed, the defendant would have the right to remove any obstruction to it. *Held,* that this instruction should have been given.

TORT for breaking and entering the plaintiff's close in August 1877, and removing a fence therefrom. At the trial in the Superior Court, before *Bacon,* J., the jury returned a verdict for the plaintiff; and the defendant alleged exceptions, the material parts of which appear in the opinion.

*W. H. Fox & S. M. Thomas,* for the defendant.

*T. M. Stetson & G. E. Williams,* for the plaintiff.

COLT, J. The superintendent of streets, acting under the order of the city council of Taunton, in August 1877 removed

a fence which had been erected by the plaintiff in 1855 for the purpose of enclosing the premises in dispute. This is the trespass complained of.

The plaintiff, through mesne conveyances, claimed title under a deed from James L. Hodges, dated in 1836, bounding the land, on the northerly and westerly sides, by the road leading into Deane Street, so called. Hodges derived his title from Job W. Hall, in 1818, by whom the land was bounded, on the same side, partly on the common, near the meeting-house, and partly on the highway and other land. The road leading into Deane Street, and called Spring Street, was laid out in 1830, over the old common, and, as the defendant contended, separated a part of the common from the rest, on the side of land owned by the plaintiff's grantors. The extent and true limit of the common on that side was in dispute at the trial; and many aged witnesses testified that the land enclosed by the plaintiff's fence was, from their earliest recollection, unenclosed land, openly used by the public, and reputed to be a part of the common, down to the time when the fence was built in 1855. The title by deed was thus in dispute. But the plaintiff also rested his claim on a title acquired by adverse possession.

The defendant, on the other hand, contended that the land was not included by the description in Hall's deed in 1818, and had not been acquired by the disseisin of the plaintiff, because his possession had not been uninterrupted.

It was in evidence, that the proprietary records of Taunton contained no grant or allotment of this land to the defendant, and it does not appear that the town or the city ever acquired title, by express grant, from the original proprietors. Whether, by dedication, or presumption of grant, the city has now the legal title to the common; whether that title is an absolute title, with full power of disposition, or is held in trust to preserve the land for the use and benefit of the public; or whether the title still remains in the proprietary; it is not now necessary to determine, because there was evidence which would justify a finding that either the public, or the city, had acquired a public easement in the land, by adverse use and enjoyment, before the time when the plaintiff first took possession by erecting his fence in 1855. If the jury were satisfied that the land in dispute was

within the limits of the common, then the erection of the fence created a nuisance, which the superintendent of streets, with or without the order of the city government, had a right to remove at any time before the plaintiff had acquired his alleged title by disseisin. *Valentine* v. *Boston*, 22 Pick. 75. *Wrentham* v. *Norfolk*, 114 Mass. 555. *Green* v. *Putnam*, 8 Cush. 21. *Arundel* v. *M'Cullough*, 10 Mass. 70.

In this aspect of the case, the defendant asked the judge to instruct the jury, that the fact that the land was left open and unenclosed, and was used by the public, for a period of twenty years, was sufficient to create an easement in it, either for the public, or for the city, and, so long as such easement existed, the defendant would have a right to remove any obstruction to it. This request contained a proposition which, as the case stood, should have been distinctly presented to the jury. The defendant's case depended on establishing by prescription the existence of the public common, and the fact that this land was part of it, at the time when the alleged encroachment by the plaintiff was made; but the judge refused to give the instruction requested, or its equivalent. It is indeed stated in the last part of the bill of exceptions, that full instructions were given, and not excepted to, as to what would constitute adverse possession; but it is apparent that this statement, from its relation to the instructions immediately preceding, and from the technical form in which it is put, has reference to the plaintiff's claim of title by adverse possession to the land, and not to the law governing the acquisition of a public easement by adverse use and enjoyment.

The city in good faith claimed title to the fee in the land, or at least title to a public easement in it. In 1865, a committee was appointed to prepare and report a schedule of all its real property, with a valuation of the same; and it was testified that the committee entered upon and appraised the land in dispute, as property of the city. In February 1868, another committee was appointed to ascertain what land, near Church Green, belonging to the city, was then occupied by private parties, and there was evidence that this committee entered upon and surveyed this land and included it in their report as belonging to the city. In November of the same year, an order was passed directing the superintendent of streets to widen Spring Street, by taking land

of the city, under which, in 1869, he removed the plaintiff's fence, leaving the place open to the public.

It was the duty of the city government in support of the claim of title, by properly appointed agents, to remove obstructions to the use of the public common. And if in so doing, and while acting in good faith, a trespass was committed, the city in its corporate capacity is liable.

In *Thayer* v. *Boston*, 19 Pick. 511, 515, which was an action against the city for obstructing Dock Square by certain acts of officers having charge of the streets, Chief Justice Shaw said: " There is a large class of cases, in which the rights of both the public and of individuals may be deeply involved, in which it cannot be known, at the time the act is done, whether it is lawful or not. The event of a legal inquiry, in a court of justice, may show that it was unlawful. Still, if it was not known and understood to be unlawful at the time, if it was an act done by the officers having competent authority, either by express vote of the city government, or by the nature of the duties and functions with which they are charged, by their offices, to act upon the general subject-matter, and especially if the act was done with an honest view to obtain for the public some lawful benefit or advantage, reason and justice obviously require that the city, in its corporate capacity, should be liable to make good the damage sustained by an individual, in consequence of the acts thus done." It was accordingly held in that case, that the city was liable in an action on the case, where acts are done by its authority, which would warrant a like action against an individual. See also *Anthony* v. *Adams*, 1 Met. 284, 287; *Hawks* v. *Charlemont*, 107 Mass. 414; *Hill* v. *Boston*, 122 Mass. 344, 358, 359.

It was the right of the city, under the circumstances stated, to remove the obstruction, and the instruction asked ought to have been given. It is not necessary to consider other questions, which may be presented in a different form at a new trial.

*Exceptions sustained.*