MARTIN CEREL, trustee, *vs.* TOWN OF FRAMINGHAM.

Middlesex. December 9, 1960. — February 6, 1961.

Present: WILKINS, C.J., SPALDING, WILLIAMS, CUTTER, & KIRK, JJ.

*Adverse Possession and Prescription. Municipal Corporations,* Adverse possession, Property. *Land Court,* Appeal.

An appeal from the final order of the Land Court in a registration proceeding brings to this court the question of law whether the order is correct on the facts stated by the judge in his decision. [18]

A town acquired no title by adverse possession to a parcel of land outside an area in which it was authorized by statute to take land for a sewerage disposal system and did take land for that purpose where, although for substantially more than twenty years the parcel was occupied by sewerage filter beds maintained by town employees, there was never any authorization or ratification of or participation in such occupation of the parcel constituting corporate action of the town to possess it.   [20-21]

PETITION filed in the Land Court on November 1, 1951.

The case was heard by *Cotton,* J.

*Alden S. Seltzer,* Town Counsel, for the respondent.

*James D. St. Clair, (Abraham T. Handverger* with him,) for the petitioner.

SPALDING, J.   This is a petition for registration of title to a parcel of land (hereinafter called the locus) in Natick. The respondent claimed ownership in the locus by adverse possession.   The decision of the judge, which included findings of fact, ordered the fee of the locus to be registered in the name of the petitioner "free of any rights of the respondent."   The respondent appealed.   G. L. c. 185, § 15; c. 231, §§ 96, 142.   An appeal from the Land Court brings before this court only questions of law apparent upon the record.   Findings of fact cannot be revised.[1]   *Holmes* v. *Barrett,* 269 Mass. 497, 499.   *Sheehan Constr. Co.* v. *Dudley,* 299 Mass. 48, 49.   The question is whether the ultimate order or determination is correct in law upon the facts found by the judge in his decision.   See *Harrington* v. *Anderson,* 316 Mass. 187, 192.

The respondent was empowered by St. 1887, c. 403, to take, by purchase or otherwise, in the towns of Framingham and Natick or either of them, lands, rights of way or easements necessary for the establishment of a sewage disposal system.   A particular area, in which this taking could be made, was designated.   Section 2 provided that nothing could be done under the act until the proposed location had

---

[1] Under an anomalous exception, applicable to appeals on the law side of the Land Court, facts stated in the judge's decision are part of the record. *McCarthy* v. *Lane,* 301 Mass. 125, 127.   *Harrington* v. *Anderson,* 316 Mass. 187, 192-193.

been approved by the State board of health. Section 3 provided that in the case of any taking under the act, other than by purchase, the "said town shall file and cause to be recorded in the registry of deeds for the county and district in which said lands, water rights, or other real estate lie, a description of the same as certain as is required in a common conveyance of land . . . ." Section 10 required the approval of the voters of the respondent, which was duly given on February 20, 1888.

The findings of facts made by the judge include the following. In 1888 the respondent took certain land in Natick as authorized by St. 1887, c. 403. Within a year or two, it began laying out filter beds on the area taken, but extended them outside of the authorized area (and the land that had been taken) into the locus. "From then until 1936 the . . . locus . . . was substantially covered by two filter beds cared for by the sewer department of the . . . [respondent] with the assistance of the highway division. During this period the only use of the locus was maintaining these filter beds. There was never any indication on the ground which would show the . . . 'division line.' " Several times land was taken from the locus for the relocation and improvement of adjacent highways. Thus it now is reduced to about one third of the original area. In 1936 the use of the locus for filter beds was abandoned. "[T]he area was leveled off by eliminating the banks around them and from then on nothing was done on [the] locus except incidental cleaning up which was done more as a public service than [as] specific acts of possession." In 1950 the selectmen of the respondent by lease allowed a third party to maintain a sign on the locus.

"[T]he locus was clearly excluded from the . . . [1887] enabling act area and there has never been any formal or legal taking of a fee or easement in the locus attempted under said act or otherwise . . . ." The acts of the respondent with respect to the locus were in direct violation of the 1887 act in maintaining sewage beds over the division line, thus putting them in another water basin. The State

board of health did not approve this action and could not have done so. Although "from 1889 to 1936 certain employees of the respondent . . . used the locus by continuous and exclusive maintenance of filter beds for sewage" (an activity "discernible to all and . . . [interfering] with the use of the owner of record"), "there never has been any corporate action by the . . . [respondent] to take the locus by adverse possession and to disseize the owner." Nor was there "any authority for its employees to do so"; nor any "ratification or general occupation by . . . [its] citizens." The judge concluded that the respondent had "not supported its burden of proof as to any adverse use."

There was no error.

The sole question is whether the judge on the basis of the foregoing facts could have properly concluded that the respondent acquired no rights in the locus by adverse possession. That a town may acquire title to real property within its limits by adverse possession is well established. *Milton* v. *First Congregational Church in Milton,* 10 Pick. 447, 452. *Boston* v. *Richardson,* 105 Mass. 351, 371–372. *Murphy* v. *Commonwealth,* 187 Mass. 361, 366–375. *Attorney Gen.* v. *Ellis,* 198 Mass. 91, 98. *Enfield* v. *Woods,* 212 Mass. 547, 554. See *Loring* v. *Brackett,* 3 Pick. 403, 412–413; *Gordon* v. *Taunton,* 126 Mass. 349, 351–352; *Deerfield* v. *Connecticut River R.R.* 144 Mass. 325, 334–336; *Proprietors of Jeffries Neck Pasture* v. *Ipswich,* 153 Mass. 42, 45–46. Whether a town may acquire land in a similar manner outside its territorial limits has not been decided. A city or town may purchase land in another town for municipal purposes. *Somerville* v. *Waltham,* 170 Mass. 160, 161. And it may take land outside by eminent domain if authorized by legislation such as St. 1887, c. 403.[1] We assume, without deciding, that a town may acquire rights in land outside its territorial limits by adverse possession. But in acquiring such rights it would have to meet all the prerequisites for acquiring such rights within the town. One

---

[1] See generally, Anderson, The Extraterritorial Powers of Cities, 61 Am. L. Rev. 641 (1927).

of these prerequisites, as will presently appear, was not satisfied here.

For a town to acquire title to property by adverse possession, it is necessary that the disseisin be the corporate action of the town. *Proprietors of Jeffries Neck Pasture* v. *Ipswich,* 153 Mass. 42. This was a petition under Pub. Sts. c. 176 to compel the town of Ipswich to try the title to certain lands alleged to belong to the petitioner. The town contended that there had been possession on its part which precluded the petitioner from establishing an exclusive possession necessary to maintain the action. It was said by Knowlton, J., at page 46, "The evidence offered to show that the selectmen and surveyors of highways had for thirty years taken gravel from Eagle Hill for the repair of roads, under a claim of right in the town, was rightly excluded. The selectmen and surveyors were public officers who acted independently, and who could not, in a matter of this kind, affect the town by their action. . . . As they could create no liability against the town by entering on land of another, the town could not, without a corporate vote, acquire rights in the land by virtue of such action."

It is not necessary here to attempt to define the acts required to constitute the appropriate corporate action. The judge below found specifically that there had been no corporate action in the respondent's original possession of the locus and that there was no subsequent ratification or general occupation by the citizens. The respondent bases its claim solely on the fact that its employees used and maintained the beds on the locus. The employees had no authority in themselves to build or maintain sewage beds in the locus, and the respondent failed to show authorization or participation which might arguably constitute corporate action. The case at bar is distinguishable from *Enfield* v. *Woods,* 212 Mass. 547, 554, cited by the respondent, where there was a finding that "the town . . . its selectmen and citizens generally have laid claim to said land as the property of the town" for at least seventy years.

*Decision affirmed.*