WINTHROP M. PUFFER & another *vs.* CITY OF BEVERLY
& others
(and three companion cases).

Essex.   December 6, 1962. — February 5, 1963.

Present: WILKINS, C.J., WHITTEMORE, CUTTER, KIRK, & SPIEGEL, JJ.

*Public Landing. Municipal Corporations, Public landing. Adverse Possession and Prescription. Way, Public: what constitutes. Land Court, Requests and rulings.*

Even if a certain report was erroneously admitted in evidence at the trial of registration proceedings in the Land Court, no prejudice to the excepting parties appeared where the report was merely cumulative of other evidence admitted. [401–402]

Facts found by a judge of the Land Court in registration proceedings made proper the denial, as inapplicable or irrelevant, of requests for rulings relating to an alleged way, including requests for rulings that certain conclusions were warranted by the evidence. [402]

In registration proceedings in the Land Court by owners of seashore lands over which the municipality alleged the existence of an ancient way, findings by the trial judge, who took a view, respecting proceedings purportedly establishing the way, the usage, physical characteristics and present condition of the alleged way and of the surrounding terrain warranted his conclusion "that no rights of way . . . as claimed . . . now exist over any part" of the landowners' properties. [399–401, 402–403]

In registration proceedings in the Land Court by owners of lands on a cove of the sea reached by a public street from the end of which the municipality claimed a public landing place existed to low water mark, findings by the trial judge respecting layouts made by the town in 1775 and 1803, not considered as takings of a landing place, in one of which it was stated that a landing "has been emproved time out of mind without molestation," respecting action of the county commissioners in 1954 in bounding and defining an "existing" public landing, and respecting the physical features of the cove, the cleaning of the beach by the municipality, and the use of the cove for landing and mooring purposes by the general public warranted the judge's conclusion that a public landing place existed "by immemorial usage and by prescription." [403–404]

PETITIONS filed in the Land Court on February 5, 1958.

The cases were heard by *Fenton,* J.

*Robert W. Reardon* for the petitioners.

*Carl V. Joslin,* City Solicitor, for the respondents.

Puffer *v.* Beverly.

CUTTER, J.  The owners[1] of four parcels of shore land in Beverly seek to register their titles.  The Land Court judge determined (a) that certain of these parcels were affected by a public landing at Ober Street Cove, and (b) that none of the parcels was affected by an alleged ancient way or prescriptive easement.  The landowners in their bill of exceptions present various questions relating to the determination about the landing.  The city presents its exceptions to the denial of requests for rulings pertinent both to the landing and to the alleged ancient way.  The city asserts that the public landing and the ancient way still exist.  Other issues are no longer in dispute.

The accompanying plan shows roughly the general area surrounding the loci.  The public landing, which the judge found to exist, is near the point marked Ober Cove.  The approximate alleged location of the ancient easement is indicated by a dotted line.

---

[1] The original petitioners were Winthrop M. Puffer, Frank H. Wetmore, Julius B. Schliemann, and Philip C. Murfitt, and their respective wives.  In the case filed by the Murfitts, H. Gunther Rudenberg and his wife have been substituted for the Murfitts on motion.  The position taken by the city was supported in major part in the answers filed by the county of Essex.

Concerning the landing, the Land Court judge found the following facts. ''The town of Beverly made two layouts relating to Ober Street and also to a landing place extending from the southerly extremity of Ober Street to low water mark. One was made in 1775 . . . and the other in 1803 . . . .'' Ober Street is a public street and there is no controversy as to its location. There also is no question as to the location of the boundary lines of the landing[2] as then laid out.

''The selectmen of Beverly in their taking of 1775 stated, 'Whereas said way has been emproved time out of mind without molestation till of late we award no damages to any person.' . . . It may be presumed that these words applied as well to the landing and that even at that time use was made for landing purposes. That the cove has been used for landing purposes without let or hinder for at least the last seventy odd years tends to give rise to a presumption that the molestation [thus] suggested . . . has long since ceased. The physical features of the cove, with its shelter from the elements and accessible approach to the beach and water, suggest it as a natural landing place and one which could have been used as such from early times.''

Acting under G. L. (Ter. Ed.) c. 88, § 16,[3] ''the county commissioners . . . on October 26, 1954, proceeded to bound and define a public landing at Ober Street Cove in accordance with . . . the purported layouts of 1775 and 1803 . . . . The proceedings purported to lay out an existing public landing and not to create one by eminent domain . . . .'' The city at times cleaned the beach at Ober Cove in 1958. It ''maintained a rubbish disposal barrel there as long ago as 1935.'' The judge ruled ''that a public landing place existed at the time of the county commissioners' action . . . and that by . . . [that] action . . . a public landing place now legally exists'' as claimed.

---

[2] The landing as claimed does not lie on any part of the land of the Puffers or the Wetmores. A small piece of the Rudenberg land lies within the landing area. The Rudenbergs and the Schliemanns claim an easement for ''boating, bathing, and fishing'' in other beach land on which lies a portion of the landing. The landing is ''in controversy only to this extent.'' The owners of other land within the landing area have not sought registration.

[3] See also §§ 14 (since amended by St. 1956, c. 262), 15, 17–19.

Puffer *v.* Beverly.

The judge made the following findings concerning the alleged ancient way. Present Beverly was a part of the town of Salem in 1644. Part of Beverly was set off from Salem in 1668 and part in 1753. On November 13, 1644 ("at a towne meeting of the 7 men, Mr. Endicott, Mr. Gardner, Mr. Hathorne, Peter Palfrey, Goodm. Lord, Jeffrey Massy, Henry Bartholemew"), the town of Salem passed an order: "that all such as have houses & lotts next the waters side in any place in the towne shall mayntayne a good way both for horse and man of eight foote broad at least uppon payne of presentmt. & such a fine as the towne or Court shall impose upon such as are defective." In 1646 a committee[4] was appointed (at a general town meeting on October 26) to "lay out a way between the Ferry at Salem & the head of Jeffryes Creek & that it be such a way as men may travell on Horse back & drive Cattle & if such a Way be not found, then to take speedy course to sett up a foot Bridge at Mackrell Cove," and later that year the committee "reported back . . . that it had 'made it sufficient.' " In 1884 the Beverly town committee on beaches reported that it was "very evident that the above committee laid out such a way, from the fact that it is still in existence and well defined . . . as near as we are informed."

On January 31, 1955, the "board of aldermen of . . . Beverly passed an order requesting the county commissioners . . . to define and bound a 'way for horse or man of eight foot broad at least' next to the salt water as ordered by Salem town meeting on November 13, 1644 . . . . An order of taking by [the] county commissioners . . . of an ancient way was recorded on November 14, 1956 . . . . This order purported to relocate a way eight feet wide . . . . The whole of this way lies easterly of Bay View Avenue . . . . No part of it lay . . . on any part of the properties here under consideration."

---

[4] "William Woodbury & Richard Brackenbury, Ensign Dixe, Mr. Conant, Leiftent Lathrop & Lawrence Leech." The vote is quoted not from the judge's findings but from a certified abstract of the original record. It will be observed that the names of two committee members have been given to ways in the area shown on the accompanying sketch, which suggests that the way, if laid out, may have been in this general area.

Puffer *v.* Beverly.

The judge heard testimony as to usage and as to the present condition of the way and took a view. He specifically found that the "terrain, contour and natural characteristics of the properties . . . when related to [the] surrounding area do not lend themselves as reasonable sites for a 'good way' to say nothing of one eight feet wide. The way such as described by the most favorable witnesses is at best a narrow, winding, shifting, unimproved, slightly trodden, 'indicated' path which has never been used by horse or vehicle and is dangerous in places and all but impassable on foot. The sporadic use of the land by a few people . . . has not been of such a character as to create a public way by prescription." The judge referred to testimony about various fences in the area in 1934 and to the "meager" evidence "as to houses and lots as they existed in 1644," when they were "much fewer in number" and "such waterside lots, as there may have been . . . extended much farther back from the shore than now," so that the location of any ways "had wide latitudes, within reason, without recourse to such an unsuitable site as presented by . . . [these] properties."

The judge found that "no such site was intended or adopted under the [1644] proceedings" and that no "way was thereby created over the land described in the petitions. So far as . . . [these parcels are] concerned, the way has never been laid out by metes and bounds or courses and distances, nor monumented or located on the ground, nor is it shown or indicated on any maps or plans . . . in evidence. It was agreed 'that . . . Beverly has never expended any money, or done any acts, in connection with so-called ancient highway as it affects . . . these . . . loci.' "

The judge also found that there was no practicable path between Bay View Avenue and the cove, "that the dominant objective of travel at Ober Cove was to reach the cove; that Ober Street was the natural and nearly the exclusive means of reaching it; [and] that occasionally some person, at times, would venture across private property . . . not in the exercise of a public right. In this they acted in a manner more consistent with permission or toleration rather than by acquiescence or as a matter of right." He ruled

"that no rights of way . . . as claimed . . . now exist over any part of the . . . [loci] other than over Ober Street." In consequence the court denied various city requests for rulings.

As to both the ancient way and the public landing the judge referred, to some extent, to "the Perley Report, so-called . . . an officially authorized report claimed to have been made by . . . [Mr.] Sidney Perley who . . . was a member of the Massachusetts Bar . . . [and a Land Court] examiner . . . now deceased. The original of the report is not available and is reputed to have been sunk . . . with the . . . Lusitania. A document purporting to be an accurate copy of the Perley report . . . in the custody of the commissioner of public works . . . of Beverly, was introduced in evidence," subject to the landowners' exceptions.[5] A plan found accompanying the Perley report was produced for examination at the request of the landowners' counsel and was introduced without objection.

1. The landowners' exception to the use of the Perley report need not be considered in connection with the question of the alleged ancient way. The judge's decision, and our decision, on that issue are in favor of the landowners. With respect to the Ober Street landing the judge's use of the report in his decision appears to have been to refer (a) to the fact that portions of the report "relate to public landing places and ancient public rights of way," (b) to the inaugural address of the 1902 mayor of Beverly, (c) to the report on January 4, 1902, of the city solicitor concerning certain petitions to establish public landings, and (d) to the plan accompanying the report. A copy of each of these documents, other than the report itself, was admitted in evidence, apparently without objection. Certified copies of the principal documents relating to the Ober Street landing, the 1775 and 1803 layout locations, were set out in the Land Court examiner's supplemental report. We perceive no

---

[5] There was testimony that Mr. Perley was the author of a three-volume history of Salem and of "Indian Land Titles of Essex County." The city clerk could not now locate the original report. A 1914 letter of transmittal to the then mayor of Beverly, signed in typewriting "Sidney Perley," was attached to the copy of the report. The report was accepted by the board of aldermen and ordered placed on file on December 17, 1915.

way in which the use of the Perley report, even if inadmissible, could have been prejudicial or more than cumulative testimony.[6]  There is thus no occasion to determine whether the report was admissible as an ancient document. See Wigmore, Evidence (3d ed.) §§ 157, 1311, 1573, 2107–2108, 2137, 2145, 2145a; McCormick, Evidence, §§ 190–191, 298.

2.  Upon the facts found by the judge, the city's requests for rulings relating to the alleged way were inapplicable or irrelevant.[7]  They were properly denied.  Even requests that he rule that certain conclusions were "warranted" had no application in the light of the facts actually found by him.  See *Perry* v. *Hanover,* 314 Mass. 167, 173–175; *Riccicardone* v. *Carvelli,* 334 Mass. 228, 231; *M. DeMatteo Constr. Co.* v. *Commonwealth,* 338 Mass. 568, 585.  Cf. *Bresnick* v. *Heath,* 292 Mass. 293, 298–299.  Similarly, his finding (that the way has never been laid out on the loci or shown on any map as on this land) made immaterial requested rulings that the 1644 and 1646 actions were "legal at that time" and continue "to carry full legal force" and that a public way "duly laid out continues . . . until legally discontinued."  See *Mahan* v. *Rockport,* 287 Mass. 34, 37. See also *Boyce* v. *Templeton,* 335 Mass. 1, 3.  The judge was warranted in concluding that the 1646 route, if, indeed, ever laid out in the vicinity of the loci, did not cross the landowners' parcels.[8]  He could reasonably regard as unreliable hearsay the somewhat vague statements of the 1884 Beverly committee.

Rulings that the evidence permitted findings that a way

---

[6] Certified exhibits containing the 1646 order and report and the 1884 report were before the judge otherwise than in the Perley report.

[7] Requests nos. 7, 9, and 20 related to the 1644 Salem town order.  Requests nos. 8 and 21 related to the 1646 order.  Even if it be assumed that these orders have some present vitality, they have no application in this case, in view of the judge's findings that they did not apply to the loci because of the physical characteristics of the land.  See the findings already quoted concerning the area between Bay View Avenue and Ober Cove and a further finding that the "route as indicated in the westerly direction from the cove shows no trace of travel, and . . . [that there are] large trees blocking all direct lines of approach and a precipitous slope which made the area hazardous to traverse and very dangerous to climb."

[8] The sketch map indicates that a reasonably direct route from the sea at the southerly end of Woodbury Street to the southerly end of Brackenbury Street would be likely to pass to the north of the loci.

had been acquired over the loci by use from time immemorial or by prescription similarly were rendered immaterial by the findings. The judge was warranted either in declining to accept the oral evidence of past use of a path near the loci, or in inferring that any such use had been permissive.

3. If it be assumed (see *Leshefsky* v. *American Employers' Ins. Co.* 293 Mass. 164, 166–167; see also *Harrington* v. *Anderson,* 316 Mass. 187, 192–193; *Knapp* v. *Reynolds,* 326 Mass. 737, 738) that such an issue is before us, the judge's findings warrant his conclusion that a public landing place existed when the county commissioners defined the Ober Street landing on October 26, 1954. That 1954 action of the county commissioners, of course, merely purported to fix the area of the landing as alleged to exist earlier. See G. L. c. 88, § 16. Cf. § 14, as amended by St. 1956, c. 262. It did not effect a taking or prevent the affected landowners in this proceeding from questioning the existence of a landing place. See *Gardner* v. *County Commrs. of Essex,* 183 Mass. 189, 191–192.

The Beverly layouts of 1775 and 1803 included in Ober Street an area between high and low water. The judge, however, did not rest his decision on these layouts as by themselves constituting takings of a public landing place in the defined area below high water mark. Our decisions, indeed, indicate that such a taking, prior to the enactment of St. 1908, c. 606 (now found in G. L. c. 88, §§ 14–19, as amended), would not have been valid in the absence of legislative authorization. The judge's conclusion appears to be based upon the acquisition of public rights by immemorial usage or by prescription. See *Kean* v. *Stetson,* 5 Pick. 492, 494–495 ("Landing places have in some towns existed by immemorial usage on the banks, and perhaps on the shores of creeks or rivers, but towns have no right to create them either as such, or under the pretence of laying out a way"). *Marblehead* v. *County Commrs. of Essex,* 5 Gray, 451, 452. *Boston* v. *Richardson,* 105 Mass. 351, 364–365. *Cape Cod S.S. Co.* v. *Selectmen of Provincetown,* 295 Mass. 65, 67, where it was said that "public landings have been recog-

nized both by immemorial usage and by law from the earliest existence of the State." See also *Commonwealth* v. *Tucker,* 2 Pick. 44, 46 ("[c]ommon landing places are recognised by statute and provision is made for abatement of nuisances on them"); *Bennett* v. *Clemence,* 6 Allen, 10, 15, 17–18; *N. Ward Co.* v. *Street Commrs. of Boston,* 217 Mass. 381, 384. Cf. *Wilson Line of Mass. Inc.* v. *Selectmen of Hull,* 322 Mass. 296, 298. In *Boston* v. *Richardson,* 105 Mass. 351, 357, it was said that a grant of flats "for a landing place cannot be presumed without clear proof of such use as would show a dedication for that purpose. . . . And even the use of them for a public landing place, as in the case of a highway, would at most show a mere easement in the public, quite consistent with a private title in fee in the soil."

Even if the 1775 and 1803 layouts were not takings, they did constitute evidence bearing upon immemorial usage by the public and the prescriptive acquisition by the public as against private owners (cf. *Arundel* v. *McCulloch,* 10 Mass. 70, 71; *Marblehead* v. *County Commrs. of Essex,* 5 Gray, 451, 452) of landing rights.[9] The judge could properly consider the 1775 recital (see *Sparhawk* v. *Bullard,* 1 Met. 95, 101; *Lowell* v. *Boston,* 322 Mass. 709, 718; see also Wigmore, Evidence [3d ed.] § 1573; McCormick, Evidence, § 298) that "said way has been emproved time out of mind without molestation." In addition, he could properly give weight, as he did, to inferences to be drawn from the physical location of Ober Street in relation to the sea. He had before him somewhat vague oral testimony of use of the beach area, of mooring of boats by the general public there, and of the city's placing a rubbish barrel there in 1935 and cleaning the place in 1958. The plan accompanying the Perley report showed at the foot of Ober Street the words "Ober Cove Landing." We cannot say that the judge's conclusion that the public landing place existed "by immemorial usage and by prescription" was not warranted.

*Exceptions overruled.*

---

[9] See as to the usual public rights of fishing, fowling, and navigation, *Butler* v. *Attorney Gen.* 195 Mass. 79, 82–84; *Michaelson* v. *Silver Beach Improvement Assn. Inc.* 342 Mass. 251, 253–254.