WALTER F. LEVER & others *vs.* GRETCHEN STONE COOK.

Essex. March 5, 1969. — April 10, 1969.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, CUTTER, & KIRK, JJ.

*Real Property*, Easement, License, Sewage disposal system. *Adverse Possession and Prescription. Public Health.*

The terms of a recorded agreement between the owner of a lot and the owner of a second lot reciting that the latter and the owner of a third lot "desire to obtain the privilege of using a . . . drain . . . laid by" the owner of the first lot through his lot and that he was willing that they should do so but was "unwilling to . . . grant any easement, or permanent right," and giving the owner of the second lot revocable permission, also for the benefit of the owner of the third lot, to use the drain, warranted conclusions by the trial judge in a suit in equity commenced more than twenty years after execution of the agreement that the original use of the drain by the owner of the third lot had been permissive, even though he had not been a party to the agreement, and that the permission related only to the drain as it existed at the time of execution thereof. [636]

Evidence reported in a suit in equity warranted a conclusion by the trial judge that the defendant, the successor in title to the owner of a lot given permission to use a drain on land of the plaintiff's predecessor in title more than twenty years before the commencement of the suit had not shown that the use of the drain by the defendant and her predecessor in title had become adverse in the intervening years by any action brought to the attention of the owners of the plaintiff's land. [636-637]

An order by the board of health of a town that use on a lot of a drain emptying sewage into the ocean cease gave the owner of a second lot claiming a right to use that drain no interest in new sewage facilities constructed, pursuant to the order, on the first lot by the owner thereof after fruitless negotiations with the owner of the second lot respecting a proposed interest in the new facilities for the second lot. [637]

BILL IN EQUITY filed in the Superior Court on May 12, 1965.

The suit was heard by *Spring,* J.

*John H. Devine* for the defendant.

*Barry W. Plunkett* for the plaintiffs.

CUTTER, J.   By this bill in equity, Dr. and Mrs. Lever and their successors in title, Chester J. Szaro and his wife, seek to enjoin Mrs. Cook from using a sewage disposal system on their land (lot 9) on Tupelo Road, Swampscott, and to collect from her compensation for the use of the system. The trial judge concluded that Mrs. Cook had no easement to use the disposal system, that her use of the system, as it had existed prior to 1962, had been permissive and not adverse, and that the fair rental value of Mrs. Cook's use was $50 a month.   A final decree was entered enjoining Mrs. Cook from using the system, ordering payments by Mrs. Cook to the Levers and to the Szaros for her prior use, and directing her to pay to the Szaros $50 a month until she ceases to use the system.   Mrs. Cook appealed.   The evidence is reported.   The facts are stated principally upon the basis of the fully justified findings of the trial judge.

Szaro and his wife in 1964 acquired from Dr. Lever and his wife seashore land (lot 9) southeast of Tupelo Road. Until 1962 a sewer or drain had run to the ocean through lot 9 from land of Richard Ward (lot 8) and from Mrs. Cook's land (lot 12) each of which lay northwest of Tupelo Road or of a way also northwest of lot 9.   The drain, also used for lot 9, had existed since 1914, when lot 9 was owned by Mr. Thomas Hunt.

On January 10, 1914, Mr. Hunt entered into a recorded written agreement with Alma Ward, then owner of lot 8. This recited that Mrs. Ward "and one Willett, [then] owner of lot No. 12 . . . desire to obtain the privilege of using a . . . drain . . . laid by [Mr.] Hunt through lot 9 . . . and . . . [that Mr.] Hunt is willing that Mrs. Ward and Willett should connect with and use this drain (. . . laid by [Mr.] Hunt at his own expense . . .) but is unwilling to . . . grant any easement, or permanent right."   It granted to Mrs. Ward permission, also for the benefit of Willett, revocable on sixty days' notice, to use the drain.

Mrs. Ward and Willett were to pay all expense arising from the connecting drains. Mrs. Ward was to hold Mr. Hunt harmless from all liability arising from the work.

In 1961 and 1962 the town board of health ordered cessation of the practice of emptying sewage from the drain into the ocean. Dr. Lever commenced negotiations with Mrs. Cook and Ward to construct on lot 9 a septic tank and a leaching system, to share the cost of this work, and to prepare easements in the new works to be granted to Mrs. Cook and Ward. The new works were to be connected with the drain around the house on lot 9, formerly used by that house, and by lots 8 and 12. An estimate of the cost was obtained and the work in fact was done for $3,705.50, which was substantially above the amount estimated. Dr. and Mrs. Lever caused to be prepared and they executed an instrument creating an easement in favor of lot 8. Ward, as then owner of that lot, also executed that instrument and paid a share of the cost of the new work. Mrs. Cook did not do so, and refused to sign a generally similar agreement for an easement. An agreement drafted in her behalf was unacceptable to Dr. Lever's attorney. Dr. Lever and his wife, on July 25, 1963, notified Mrs. Cook that all rights held by her under the 1914 agreement executed by Mr. Hunt would terminate without any waiver by the Levers of rights against her based upon any continued use of the new sewage disposal system on lot 9.

1. The trial judge was amply justified in concluding that the original use of the sewer system was permissive. He could infer this from Mr. Hunt's 1914 grant of a revocable permission to Mrs. Ward. This grant referred to the intended use of the sewer by Willett, Mrs. Cook's predecessor as owner of lot 12. The 1914 grant related only to the drain as it then existed on lot 9. Even though Willett was not a party to the 1914 instrument, it recited in effect that it was made for his benefit and the inference could be drawn that any necessary construction or use by Willett following the 1914 grant was pursuant to the permission. The judge also could reasonably conclude that Mrs. Cook had not shown

(see *Ivons-Nispel, Inc.* v. *Lowe*, 347 Mass. 760, 762) that the use of the drain by the owners of lot 12 had become adverse and nonpermissive in the years after 1914 by any action brought to the attention of the owners of lot 9. See *Motte* v. *Alger*, 15 Gray, 322, 325; Restatement: Property, § 458, comment j; Am. Law of Property, § 8.56; cases collected in annotation, 55 A. L. R. 2d 1144, 1154–1159. See also *Bigelow Carpet Co.* v. *Wiggin*, 209 Mass. 542, 548. The use of the drain by the owners of lot 12 might have been presumed to be adverse if unexplained. Compare *Tucker* v. *Poch*, 321 Mass. 321, 324; *Davenport* v. *Danvers*, 336 Mass. 106, 112. That use was adequately explained as permissive by the 1914 recorded license to Mrs. Ward, in part for the benefit of Willett. Cf. *Foot* v. *Bauman*, 333 Mass. 214, 216–218, where there is mentioned no evidence that the original use of the servient property was permissive.

2. Mrs. Cook, of course, has no basis for claiming any prescriptive right to use the new septic tank and leaching bed and the new construction leading to them. She has been prevented from using the old drains to the ocean by the board of health orders (the validity of which does not appear to be disputed; see G. L. c. 111, § 123, and § 127, as amended through St. 1937, c. 339; see later amendment by St. 1963, c. 148, § 2). No interest in the separate new facilities on lot 9, paid for by others, could be gained by her as a consequence of the valid act of a public authority making it impossible for her to continue her use of the old drains, whether it was permissive or prescriptive. Even if she had possessed a prescriptive right to discharge into the ocean the effluent from lot 12, that right would not permit her (as against the owners of lot 9) to discharge it into the new facilities. Cases relied upon by Mrs. Cook seem to us inapplicable to the situation before us, where the owners of lot 9 had not agreed to the existence of any irrevocable easement interest in that lot by the owner of lot 12, and where no definitive arrangement for a new easement or license was effected in a form acceptable to them and to her. Cf. *Pope* v. *Devereux*, 5 Gray, 409, 411–412 (parol agreement for change

of right of way actually carried out); *Brooks* v. *Quinn*, 266 Mass. 132, 138; *Desotell* v. *Szczygiel*, 338 Mass. 153, 158.[1] *Brookline* v. *Whidden*, 229 Mass. 485, 492.

3. The evidence shows that the negotiations had progressed to a point where the parties had "agreed . . . [to] proceed together," and that they probably would have done so if Mrs. Cook had not rejected the grant of easement proposed by the Levers's attorney. Nevertheless, the trial judge was not required to conclude from that evidence that the oral negotiations for the new facilities were so definite that the Levers had become bound to permit Mrs. Cook to use the new facilities on terms not acceptable to them. He could reasonably conclude that the negotiations for the proposed interest in lot 9 remained subject to obtaining estimates, to the reasonable sharing of costs, and to formulation of acceptable agreements by the parties' lawyers.

*Decree affirmed with costs of*
*appeal.*

---

[1] Other cases relied on by Mrs. Cook deal (a) with improvement of a clearly existing right of way; see *Guillet* v. *Livernois*, 297 Mass. 337, 340–341; *Walker* v. *E. William & Merrill C. Nutting, Inc.* 302 Mass. 535, 543; or (b) with the curing by the dominant owner of encroachments or defaults by the servient owner. See *Sullivan* v. *Donohoe*, 287 Mass. 265, 267; *Mt. Holyoke Realty Corp.* v. *Holyoke Realty Corp.* 292 Mass. 332, 334–336. The owners of lot 9 have not interfered with any rights Mrs. Cook may have had, and improvement of any rights in the drain as it had existed before would not have restored the prior advantages of the drain to her.