THOMAS E. DALEY & another[1] vs. TOWN OF SWAMPSCOTT
& others.[2]

Essex. April 8, 1981. — May 13, 1981.

Present: HALE, C.J., GRANT, & GREANEY, JJ.

*Adverse Possession and Prescription. Municipal Corporations, Adverse possession, Property. Beach.*

In a proceeding by petitioners to register and confirm their title to certain
  waterfront property in the town of Swampscott, evidence that the
  town and its inhabitants had used that portion of the property seaward
  of the petitioners' retaining wall for more than twenty years under a
  mistaken claim of right, that that portion of the property had not been
  assessed or taxed to the petitioners, and that various town departments
  had cleaned, maintained, and patrolled the beach, provided life-
  guards, posted signs, and removed fences in furtherance of a munici-
  pal purpose to maintain a public beach for the use of the town's
  residents warranted a finding that the town had acquired an easement
  by prescription over that portion of the petitioners' land for the benefit
  of the town and its inhabitants. [827-830]

PETITION filed in the Land Court on June 19, 1975.

The case was heard by *Sullivan,* J.

*John M. Crean* for Thomas E. Daley & another.

*Howard R. Palmer,* Assistant Attorney General, for the
Commonwealth (*Harvey F. Rowe, Jr.,* Town Counsel, with
him).

*Israel Bloch,* Special Assistant Town Counsel, for the
town of Swampscott & others.

GREANEY, J.   A Land Court judge ordered title to the
petitioners' land which is situated on the waterfront in

---

[1] Mary F. Daley, his wife.

[2] Twenty-three individuals who answered the Daleys' registration ac-
tion and claimed rights to use the beach by prescription.

Swampscott registered and confirmed subject to "the rights of the Town of Swampscott, its inhabitants and [twenty-three] named individual respondents to use so much of said land as lies seaward of the retaining wall . . . for all usual purposes for which a beach is used." The petitioners have appealed, claiming error in the judge's determination that the town of Swampscott had acquired an easement by prescription over the beach area for the benefit of the town and its inhabitants.[3] They also dispute the judge's rulings with respect to two pieces of evidence. We affirm the decision.

The trial consumed four days in the Land Court. The evidence included a view of the locus, a Land Court examiner's title abstract, thirty-five exhibits, and testimony from twenty-eight witnesses who were conversant with the locus and its use. The judge predicated her decision on "all the evidence," most of which has been included in the record.[4] In view of the standards that govern review of a case of this nature (see *Lyon* v. *Parkinson,* 330 Mass. 374, 375 [1953]; *Otis Power Co.* v. *Wolin,* 340 Mass. 391, 395-396 [1960]; *Norton* v. *West,* 8 Mass. App. Ct. 348, 350 [1979]), we summarize the evidence which supports the judge's decision.

The parcel claimed by the petitioners (see lot 37 on the accompanying sketch plan) is bounded southeasterly by the Atlantic Ocean (Nahant Bay) and northerly by Puritan Road and is located approximately seventy-seven feet easterly of a town way running southeasterly from Puritan Road to the ocean. Between the easterly sideline of the town way and the locus is a parcel of land (lot 38) which is

---

[3] The petitioners do not contest the Land Court's determination that their real estate is subject to the usual public rights of fishing, fowling and navigation below mean high water. See *Butler* v. *Attorney Gen.,* 195 Mass. 79, 82-84 (1907); *Michaelson* v. *Silver Beach Improvement Assn.,* 342 Mass. 251, 253-254 (1961). Their appeal from that part of the decision which found that the individual respondents had acquired prescriptive rights to use the beach has been waived.

[4] The record contains a transcript of the material evidence which includes the contents of many of the exhibits. The parties essentially propose that the case be decided upon a review to determine whether the judge's findings are warranted on any view of the evidence.

owned by the town. A second way leading to the ocean (not shown on the sketch) is situated approximately 1,200 feet easterly of the depicted town way and a shoreline of about that distance runs in a roughly crescent shape between the two passageways. There is a retaining wall which extends at least from the easterly line of the locus in a westerly direction to the town way. The beach area in dispute is situated between this retaining wall and mean high water. The locus is near the former site of a well-known summer hotel, the New Ocean House, which was destroyed by fire in 1969. Also situated nearby is a monument known locally as the "Great Rock." The beach located to the west of the Great Rock (including the beach in front of the petitioners' land) is accessible from the westerly town way and was described in the testimony as Whales Beach, while the beach lying to the east of the rock is reached from the easterly way and was referred to in the testimony as Eiseman's or "Iceman's" Beach. The judge determined that earlier title instruments concerning the beach did not establish public rights of record to the petitioners' beach as the town contends. We do perceive, however, that one such conveyance (the so called Phillips grant in 1873) could (as will be discussed later) have some significance on the question of adverse possession.[5]

At least sixteen witnesses testified from experience and memory that Whales Beach, including the portion in front

---

[5] This grant by Ebenezer B. Phillips gave the town "a full right and license to use, for purposes of recreation and pleasure, all that portion of Whales Beach, so-called, in said Swampscott below the line of ordinary high water mark extending from land of William R. Blaney on the East to land now or formerly of Ebenezer N. Wardwell on the West." It specifically provided that the grant and license were not to be construed "to give any right to use or place any bathing house, portable or otherwise, or any other building or structure upon said beach." Phillips also reserved the right of laying any ways for landing and for hauling up boats on any place he might select upon the beach. After examining the title abstract, and an 1872 report by the town's board of selectmen with respect to the laying out of two town ways to the sea, and after weighing the testimony of the Land Court title examiner, the judge found that Wardwell was not a predecessor in title of the petitioners and that the Phillips grant terminated at or to the east of the petitioners' land.

of the petitioners' retaining wall, always had been considered a public beach, that families and other members of the public used the beach, that the number of people on the beach varied according to the time of year and the weather but ranged, in-season, from about twenty-four persons on weekdays upwards to 150 or 200 people on weekends, and that these people engaged in activities such as "lying on blankets, sitting in chairs, sitting on the sand . . . kicking beach balls around . . . [and] general beach activity." Public use of the beach was described by various witnesses as having occurred for "30 odd years"; "continually" for about twenty-eight years; every year "since 1931"; "practically for the whole [of] 40 years"; and since 1927 through the war years and thereafter. There was testimony from one Huston, the town superintendent of public works and town engineer, that the public works department maintained all the beaches in town including the beach in question, that crews from that department generally cleaned the beach seven days a week from June 1 to September 15, depending on the weather, since at least 1956, and before that year according to department records, that the department placed trash barrels on the beach and emptied them daily into a dump truck, that a public works front end loader with a rake attached was used to rake the beach, that lifeguard stands were erected on the beach at or near the petitioners' home, and that lifeguards employed by the town's recreation commission guarded the area.

Other witnesses who had been employed by, or associated with, various town departments and agencies testified that the park commission placed and maintained signs on which rules and regulations for the proper use of the beach were posted, that signs containing such rules had always been in front of or near the locus, that children involved in a town recreation program had been brought to the beach and that the police occasionally patrolled the area. This testimony referred to activities on the entire length of Whales Beach but also included use of the beach in front of the petitioners' seawall. A tenant of a former owner of the petitioners'

property testified that he had rented the property in the summer of 1951 and that its then owner had informed him that the beach in front of the house was a public beach, frequently used by the public. There was evidence that despite the words "private beach" having been painted on the petitioners' seawall sometime in 1975 or 1976 people still continued to use the beach. A member of the town's board of assessors testified from "very old [assessors'] records" that since at least 1924 owners of the petitioners' property had been assessed for only 9,060 square feet of upland, and that the land seaward from the retaining wall had never been assessed as the petitioners' land or included in their tax bill. A member of the town's board of selectmen testified that the board had ordered fences erected on or near the beach by littoral proprietors removed. Thomas E. Daley, the male petitioner, testified that in June, 1968, he had erected a fence along the beach portion of his property (perpendicular to the seawall), and that the fence had been removed by an employee of "the Town" who had said that he "was ordered to do this." The petitioners recorded a notice to prevent acquisition of an easement under G. L. c. 187, § 3,[6] on June 19, 1974. Finally, the judge stated in her decision that: "[t]here are numerous photographs in evidence which

---

[6] This statute reads as follows: "If a person apprehends that a right of way or other easement in or over his land may be acquired by custom, use or otherwise by any person or class of persons, he may give public notice of his intention to prevent the acquisition of such easement, by causing a copy of such notice to be posted in a conspicuous place upon the premises for six successive days, and such posting shall prevent the acquiring of such easement by use for any length of time thereafter; or he may prevent a particular person or persons from acquiring such easement by causing a copy of such notice to be served upon him or them as provided by law for the service of an original summons in a civil action. Such notice from the agent, guardian or conservator of the owner of land shall have the same effect as a notice from the owner himself. A certificate, by an officer qualified to serve civil process, that such copy has been served or posted by him as above provided, if made upon the original notice and recorded with it, within three months after the service or posting, in the registry of deeds for the county or district in which the land lies, shall be conclusive evidence of such service or posting."

show the use of the beach in front of the petitioners' property by multitudinous persons who obviously are not merely guests of the abutting owners. It is apparent from the nature of the bathing suits and other clothing worn by these individuals and also by the evidence at the trial that use of the beach dates back to a period well over twenty years before the petition was filed or the notice to prevent the acquisition of easements pursuant to G. L. c. 187, § 3 recorded . . . . Although there is no way of ascertaining from the pictorial evidence whether those using the beach are members of the general public in Swampscott or guests or employees of the New Ocean House, it is, however, corroborative of the other evidence that this beach has been open to others than those claiming under the abutters for a good part of this century."

There is no doubt that a municipality may acquire an easement by prescription to use land located within its limits for a specific public purpose. *Commonwealth* v. *Low*, 3 Pick. 408, 412 (1826). *Boston* v. *Richardson*, 105 Mass. 351, 371-372 (1870). *Murphy* v. *Commonwealth*, 187 Mass. 361, 366-375 (1905). *Attorney Gen.* v. *Ellis*, 198 Mass. 91, 98 (1908). *Enfield* v. *Woods*, 212 Mass. 547, 554 (1912). *Cerel* v. *Framingham*, 342 Mass. 17, 20 (1961). The test by which a municipality acquires a prescriptive easement is basically the same as that for an individual — any unexplained use for more than twenty years which is open, continuous, and notorious is presumed to be adverse and conducted under a claim of right. *Fortier* v. *H.P. Hood & Sons*, 307 Mass. 292, 298 (1940). *Tucker* v. *Poch*, 321 Mass. 321, 323, 324 (1947). *Lever* v. *Cook*, 355 Mass. 634, 636-637 (1969). See G. L. c. 187, § 2. Once the presumption arises, the landowner has the burden of rebutting it by showing that the use was permissive. *Truc* v. *Field*, 269 Mass. 524, 528-529 (1930). *Tucker* v. *Poch*, *supra* at 324.

In addition to these requirements, it is also necessary for a municipality to establish that its acts of disseisin constitute "corporate action" (*Cerel* v. *Framingham*, *supra* at 21) be-

cause "'persons of the local community' and the 'general public' are too broad a group to acquire by prescription an easement to use private beaches for bathing and for recreational purposes." *Ivons-Nispel, Inc.* v. *Lowe,* 347 Mass. 760, 761-762 (1964), and cases cited. What constitutes the requisite corporate action has never been precisely defined, although the concept has been discussed or alluded to in several cases. Mere sporadic use of private property by a municipality will not suffice. See *Proprietors of Jeffries Neck Pasture* v. *Ipswich,* 153 Mass. 42 (1891) (actual occupation and use of the disputed premises by the town to take gravel for the repair of roads for three days in August, 1888, held to be "no more than a continuing trespass, and . . . not such an inference with the petitioner's possession as to put the [town] into joint possession . . . . *Id.* at 45[7]). Nor will a fairly lengthy period of use qualify without some accompanying proof that the municipality authorized its employees to conduct activities on the property or without proof of "ratification or general occupation by . . . [the town's] citizens." *Cerel* v. *Framingham, supra* at 20-21. On the other hand, evidence of a lease executed by agents or officers of a governmental entity in the honest but mistaken belief that they had the authority to do so, coupled with occupation and use of the property by the lessee for twenty years or more, will warrant a conclusion that the municipality is asserting rights in its corporate capacity. See *Murphy* v. *Commonwealth, supra* at 374 (lease of beach property), and *Attorney Gen.* v. *Ellis, supra* at 97-98 (lease of rights to the waters of what was thought to be a great pond). A determination that a town, its selectmen and citizens generally had claimed and used land for a common purpose under a purported parol gift will constitute "a find-

---

[7] In this case evidence by the town that its inhabitants had for thirty years entered upon the land, and had openly and notoriously used and occupied for their own purposes such parts of it as they chose was held to have been properly excluded because "[t]hese individuals, acting independently and for themselves, were in no sense agents or local representatives of the town in its corporate capacity." *Id.* at 46.

ing that there was a corporate action . . . ." *Enfield* v. *Woods, supra* at 554. In *Puffer* v. *Beverly*, 345 Mass. 396 (1963), a decision of the Land Court that the city had acquired prescriptive rights to use a sea cove as a public landing area was upheld based upon ancient town records which described the area as public land as well as evidence of "the city's placing a rubbish barrel there in 1935 and cleaning the place in 1958." *Id.* at 404. What appears to be necessary is proof sufficient to satisfy a trier of fact that the municipality has exercised dominion and control over the land in its corporate capacity through authorized acts of its employees, agents or representatives to conduct or maintain a public use thereon for the general benefit of its inhabitants.

We believe that the judge's determination that the town had acquired prescriptive rights was proper. The evidence was sufficient to warrant a conclusion that Swampscott residents had engaged in nonpermissive, open and notorious use of the shore in front of the petitioners' home as a public beach for a considerable period of time. Although the judge made no express finding on the length of the adverse use, her implicit conclusion that it had continued for twenty years prior to the recording of the notice to prevent easement in 1974 has adequate support in the evidence. In determining that the westerly bound of the Phillips grant was easterly of the petitioners' land which thereby nullified the town's claim of record rights to the disputed beach area, the judge could infer from the grant's lack of clarity on the boundary line, that the town and its inhabitants had used the length of the shoreline between the easterly and westerly passageways as a town beach for more than twenty years under a mistaken claim of right. See 4 Tiffany, Real Property § 1159 (3d ed. 1975). The judge could also properly give weight to the fact that the beach area was not assessed or taxed to the petitioners (see *Murphy* v. *Commonwealth, supra* at 371; *Enfield* v. *Woods, supra* at 552-554) as further evidence that the town had claimed rights in the beach for

its residents.[8] The actions of the various town departments in cleaning, maintaining and patrolling the beach, providing lifeguards, posting signs, and removing fences, could be found to have been conducted in reliance upon the general authority conferred upon the town's board of public works (see G. L. c. 41, §§ 69C-69E; *Board of Pub. Works of Wellesley* v. *Selectmen of Wellesley,* 377 Mass. 621, 626 [1979]) or upon its park commissioners (see G. L. c. 45, §§ 4-5). The inferences are compelling that these activities were in furtherance of a municipal purpose to maintain a public beach for the use of Swampscott residents (see G. L. c. 40, § 5 cl. 25A), and that they were paid for out of funds duly appropriated by voters of the town. It was within the judge's prerogative to reject contradictory evidence which would have warranted a finding against the town. The judge's determination that corporate action was present must stand "if warranted on any view of the evidence and all inferences therefrom." *Otis Power Co.* v. *Wolin, supra* at 395-396. We are satisfied that it is so premised and that the judge did not misconstrue or misapply the principles set forth in the *Cerel* and *Ivon-Nispel* decisions.

The evidentiary rulings challenged by the petitioners have already been discussed (see *supra* note 8) and have been determined to be proper.

*Decision affirmed.*

---

[8] The *Murphy* and *Enfield* decisions at the pages cited in the text make it clear that the judge acted properly in admitting evidence pertaining to the assessment and taxation of the petitioners' land. She also did not err in excluding a letter from a previous town counsel to the petitioners and three other littoral proprietors with respect to the question of public rights in the beach. Her finding that the letter seemed to be part of negotiations designed to settle a legal dispute and her ruling that it could not be used to bind the town were correct. Leach & Liacos, Massachusetts Evidence 195-196 (4th ed. 1967). Cf. *Haskell* v. *New Bedford,* 108 Mass. 208, 211 (1871); *Weeks* v. *Needham,* 156 Mass. 289, 291 (1892).