NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

15-P-894                                          Appeals Court

GEORGE ATHANASIOU & another[1] vs.  BOARD OF SELECTMEN OF
WESTHAMPTON & another.[2]

No. 15-P-894.

Suffolk.     January 12, 2017. - August 22, 2017.

Present:  Vuono, Milkey, & Henry, JJ.

Adverse Possession and Prescription.  Easement.  Municipal
    Corporations, Adverse possession.  Way.  Real Property,
    Easement, Adverse possession.  Practice, Civil, Summary
    judgment.

Civil action commenced in the Land Court Department on May
20, 2013.

The case was heard by Alexander H. Sands, III, J., on
motions for summary judgment.

Harry L. Miles (Michael Pill also present) for the
plaintiffs.
Janelle M. Austin for the defendants.

---

[1] Louanne Athanasiou.

[2] Town of Westhampton.

VUONO, J.  The issue in this case is whether the town of
Westhampton (town) has acquired an easement by prescription over
a triangular parcel of land (triangle) and an abutting roadway
(way), together the "disputed area," owned by the plaintiffs,
Louanne and George Athanasiou.  On cross motions for summary
judgment,[3] a Land Court judge determined that the public's use of
the way for a continuous period in excess of twenty years,
coupled with the town's maintenance of the disputed area to
provide for such public use, was sufficient to establish a
prescriptive easement over the disputed area for the benefit of
the town and its inhabitants.  The plaintiffs appeal.

Background.  The following facts are not in dispute.  The
way is an unnamed, paved roadway that connects North Road and
Southampton Road in the rural town.  The roads merge at an
intersection located at the tip of the triangle, and the way
provides a convenient connection between the two roads (known in

_____

[3] The plaintiffs commenced this action by filing a complaint
in the Land Court seeking, among other things, a declaration
that they are the rightful fee title owners of the disputed
area.  The defendants counterclaimed, asserting that the town
had acquired a prescriptive easement over the disputed area.
The defendants subsequently filed a motion for summary judgment
after which the plaintiffs cross-moved for summary judgment on
the defendants' counterclaim.  Ultimately, summary judgment
entered in favor of the plaintiffs on their claim of ownership
and in favor of the defendants on their counterclaim.  The
defendants have not cross-appealed; therefore, the issue of
ownership is not before us.

common parlance as a "cut-through"). The way is wide enough to accommodate traffic in both directions and has been used by the public continuously for more than twenty years. The town, which does not maintain private roads, has maintained the way for public traffic during that time. Once in the early 1990s and again in or about 2005, town employees oiled and graveled the way. The town plows and sands the way approximately twenty times per year. It also patches potholes, clears fallen tree limbs, prunes trees, and collects brush obstructing the way.

The triangle is an open area of land abutted on its two sides by North Road and Southampton Road and, at its base, by the way. There was no evidence that members of the general public actively use the triangle. However, the town installed a drainage system on the triangle that allows water to drain from North Road, Southampton Road, and the way. The drainage system, which includes a swale located on the triangle,[4] has been cleared and maintained by the town for more than twenty years. In addition, the town has mowed the grounds as needed,[5] it has removed dead trees, and it has planted new trees in the

---

[4] A "swale" is "an elongated depression in land that is at least seasonally wet or marshy, is usu[ally] heavily vegetated, and is normally without flowing water." Webster's Third New International Dictionary 2305 (2002).

[5] Occasionally a neighboring farmer mows the grass.

triangle. The town has not assessed taxes on any portion of the disputed area to the plaintiffs or to anyone else.

On the basis of these uncontroverted facts, the judge determined that the disputed area is subject to the town's prescriptive rights. The judge further concluded that the easement is limited in scope, ruling that the town may

> "only . . . make use of the [d]isputed [a]rea in the manner in which they have been used . . . ; the [t]own's prescriptive rights shall not include the right to expand upon the roadway or to take actions that would result in an increase in vehicle traffic upon the [w]ay, or to make any other use of the [d]isputed [a]rea other than to maintain same in such a manner as will ensure road safety, for aesthetic purposes (i.e., mowing), and for purposes of drainage."

Discussion. Summary judgment is appropriate where "all material facts have been established and the moving party is entitled to a judgment as a matter of law." Augat, Inc. v. Liberty Mut. Ins. Co., 410 Mass. 117, 120 (1991). "In reviewing a grant of summary judgment, 'we assess the record de novo and take the facts, together with all reasonable inferences to be drawn from them, in the light most favorable to the nonmoving party.'" Pugsley v. Police Dept. of Boston, 472 Mass. 367, 370-371 (2015), quoting from Bulwer v. Mount Auburn Hosp., 86 Mass. App. Ct. 316, 318 (2014), S.C., 473 Mass. 672 (2016).

To acquire a prescriptive easement over "land located within its limits for a specific public purpose," a municipality must demonstrate (1) "unexplained use for more than twenty years

which is open, continuous, and notorious," and (2) "proof sufficient to satisfy a trier of fact that the municipality has exercised dominion and control over the land in its corporate capacity through authorized acts of its employees, agents or representatives to conduct or maintain a public use thereon for the general benefit of its inhabitants." Daley v. Swampscott, 11 Mass. App. Ct. 822, 827, 829 (1981).

The plaintiffs contend that summary judgment was improper because there is a dispute whether the public's use of the disputed area for more than twenty years was sporadic or continuous. See id. at 827. Moreover, the plaintiffs contend, there is a genuine dispute whether the town's maintenance of the disputed area was sufficient to establish "dominion and control" by corporate action.[6] Id. at 829.

We agree with the judge's determination that the town has acquired prescriptive rights over the disputed area. The defendants' summary judgment materials establish that the town's and the public's "adverse use [of the disputed area was] continuous and uninterrupted for a twenty-year period." White v. Hartigan, 464 Mass. 400, 417 (2013). Nothing in the record

---

[6] The plaintiffs also argue that the judge's holding constitutes a taking by the town for which they are entitled to compensation. We do not reach this issue because it was not before the judge, and because the claim is the subject of a separate action pending in the Superior Court.

supports an inference that the town attempted to conceal its use and maintenance of the disputed area.  See Boothroyd v. Bogartz, 68 Mass. App. Ct. 40, 44 (2007).  Rather, the facts establish that the plaintiffs and their predecessors in title had "actual knowledge of [the town's and the public's] adverse use of the property."  White, supra.  The judge correctly concluded that the defendants had satisfied their burden of demonstrating the absence of a triable issue whether the town's use of the disputed area was open, notorious, and "continued uninterruptedly for twenty years."  G. L. c. 187, § 2.[7]

We further conclude, as did the judge, that the undisputed facts are "sufficient to satisfy a trier of fact that [the town] has exercised dominion and control over the land in its corporate capacity through authorized acts of its employees . . . to conduct or maintain a public use thereon for the general benefit of its inhabitants."  Daley, supra.  The deposition testimony of the town's highway superintendent, David

---

[7] The plaintiffs have offered no countervailing evidence to support the allegation that the town's use of the disputed area was permissive.  See Daley, supra at 827.  In their answers to the defendants' interrogatories, the plaintiffs did allege that Louanne's aunt, Carolyn Fuller Coggins, "has a strong memory of her grandmother . . . telling her" that the triangle belonged to the family and that she had given "school kids" permission to play a special game on it.  There is no affidavit from Coggins in the record and even the plaintiffs themselves refer to this incident as a "single instance of permissive use."  As such, this evidence is not sufficient to show that there is a genuine issue for trial.  See Mass.R.Civ.P. 56(e), 365 Mass. 824 (1974).

Blakesley, provides ample "proof that the municipality authorized its employees to conduct activities on the property." Id. at 828. Blakesley testified that he has been employed by the town for twenty-seven years. He has witnessed the way being used by the public, he personally has maintained the disputed area, and he has both observed and ordered other town highway department employees to do the same. Blakesley and other employees have plowed, sanded, oiled, and graveled the way. They have patched potholes on the way, removed trees and fallen limbs from the triangle and the way, and cleared sediments from the swale on the triangle.

The case of Rivers v. Warwick, 37 Mass. App. Ct. 593, 596-597 (1994), upon which the plaintiffs rely, is distinguishable. We concluded in that case that evidence of occasional plowing, grading, and repairing by the town of roads by which the plaintiffs accessed their summer home was insufficient to establish that those roads were made public by prescription. Similarly, in McLaughlin v. Marblehead, 68 Mass. App. Ct. 490, 500 (2007), we concluded that the town had not satisfied its burden of showing corporate action where "[i]t performed no construction, maintenance, or work on [the disputed lane] during the requisite period." Here, by contrast, members of this rural community have used the disputed area, and the town has

maintained the area to provide for such use, continuously for more than twenty years.

The plaintiffs dispute some portions of Blakesley's testimony. They claim that summary judgment is precluded in the absence of (1) a traffic study to demonstrate continuous, uninterrupted public use of the way, and (2) a town vote authorizing the expenditure of town funds to maintain the disputed area. We are not persuaded. The plaintiffs' submissions contain no admissible evidence to rebut Blakesley's testimony, and the absence of a traffic study or a town vote does not create a genuine issue for trial. In order to defeat summary judgment, the plaintiffs are required to "set forth specific facts showing that there is a genuine issue for trial." Mass.R.Civ.P. 56(e), 365 Mass. 824 (1974). They have not done so, and summary judgment properly entered in favor of the defendants.

Judgment affirmed.